**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| CHRISTOPHER DOYLE, LPC, LCPC, <br> individually and on behalf of his clients, <br><br>           Plaintiff, <br><br>     v. <br><br> LAWRENCE J. HOGAN, JR., Governor of <br> the State of Maryland, in his official capacity, <br> and BRIAN E. FROSH, Attorney General of <br> the State of Maryland, in his official capacity, <br><br>           Defendants. | Civil Action No. _____ <br><br> **INJUNCTIVE RELIEF SOUGHT** |

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF,**
**PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DAMAGES**

Plaintiff, CHRISTOPHER DOYLE, LPC, LCPC, individually and on behalf of his clients, sues Defendants, LAWRENCE J. HOGAN, JR., Governor of the State of Maryland, in his official capacity, and BRIAN E. FROSH, Attorney General of the State of Maryland, in his official capacity, and alleges:

**INTRODUCTION**

1.       Since time immemorial, the relationship between clients and their mental health professionals has represented a sacred trust. In this vital relationship, licensed mental health professionals ("LMHPs") are tasked with providing essential care to their clients and forming critical therapeutic alliances that represent the unique relationship between professional and client. This therapeutic alliance is designed to facilitate the foundational principle of all mental health counseling: the client's fundamental right to self-determination. Throughout the history of this learned profession, clients have provided mental health professionals with their goals, and objectives that conform to their sincerely held desires and concepts of self, and mental health

professionals have provided counseling that aligns with the clients' fundamental right to self-determination. That unique relationship has, until now, been protected, revered, and respected as sacrosanct and inviolable. Now, Defendants have seen fit to storm the office doors of mental health professionals, thrust themselves into the therapeutic alliance, violate the sacred trust between client and counselor, and run roughshod over the fundamental right of client self-determination and the counselors' cherished First Amendment liberties. Defendants' purported justifications for such unconscionable actions: they do not like the goals, objectives, or desires of certain clients when it comes to one type of counseling. The First Amendment demands more, and Defendants' actions have caused, are causing, and will continue to cause irreparable injury to Plaintiff's fundamental and cherished liberties.

2.      Plaintiff brings this civil action to challenge the constitutionality of Senate Bill 1028 ("SB 1028" or the "Counseling Ban") to prevent the statute from violating his respective federal and state constitutional guarantees of Freedom of Speech and Free Exercise of Religion, and the corresponding rights of his minor clients. SB 1028 was signed into law by Defendant Governor Larry Hogan on May 15, 2018 and became effective on October 1, 2018 as Md. Code Ann., Health Occ. § 1-212.1 (West). Thus, time is of the essence because Plaintiff and his clients have suffered, are currently suffering, and will continue to suffer immediate and irreparable injury to their most cherished constitutional liberties absent injunctive relief.

3.      Plaintiff engages in licensed, ethical, and professional counseling that honors his clients' autonomy and right to self-determination, that permits clients to prioritize their religious and moral values above unwanted same-sex sexual attractions, behaviors, or identities, and that enables clients to align their values with a licensed counselor who can address these values. Plaintiff has First Amendment and state constitutional rights as a licensed counselor to engage in

and provide counseling consistent with his and his clients' sincerely held religious beliefs, and his clients have First Amendment and state constitutional rights to receive such counseling free from Defendants' viewpoint discrimination against such counseling.

4.      By preventing minors from seeking counseling to address the conflict about or questions concerning their unwanted same-sex sexual attractions, behaviors, and identities and from seeking to reduce, eliminate, or resolve their unwanted same-sex sexual attractions, behaviors, or identities through counseling, SB 1028 denies or severely impairs Plaintiff's clients and all minors' right to self-determination, their right to prioritize their religious and moral values, and their right to receive effective counseling consistent with those values.

5.      By denying Plaintiff's clients and all minors access to counseling from licensed counselors that can best help minors who desire to reduce, eliminate, or resolve their unwanted same-sex attractions, behaviors, or identity, SB 1028 infringes on the fundamental rights of Plaintiff's clients, and the rights of the parents of Plaintiff's clients to direct the upbringing and education of their children, which includes the right to meet each child's individual counseling, developmental, emotional, psychological, physical, and spiritual needs.

6.      By prohibiting them from engaging in any efforts that seek to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity, even when the client, the parents, and the LMHP all consent to such counseling, SB 1028 also violates Plaintiff's constitutional rights.

7.      Despite the value and benefit that Plaintiff has provided by offering such counseling, SB 1028 prohibits counseling to minors seeking to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity by licensed professionals, which is causing immediate and irreparable harm to Plaintiff and Plaintiff's clients.

8.      SB 1028 harms licensed counselors and their clients by prohibiting minors and their parents from obtaining the counseling services they choose, after receiving full disclosure and providing informed consent, to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity, and harms counselors by placing them in a Catch-22 forcing them to choose between violating ethical standards by complying with SB 1028, or violating the law by disobeying SB 1028.

9.      By denying minors the opportunity to pursue a particular course of action that can most effectively help them address the conflicts between their sincerely held religious beliefs and goals to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity, SB 1028 is causing those minors confusion and anxiety over same-sex sexual attractions, behaviors, and identity and infringing on their free speech and religious liberty rights.

10.     Plaintiff seeks preliminary and permanent injunctive relief against Defendants, enjoining the enforcement of SB 1028 because it violates: (1) the rights of Plaintiff and his clients to freedom of speech and free exercise of religion, guaranteed by the First and Fourteenth Amendments to the United States Constitution, and (2) the rights of Plaintiff to liberty of speech and free exercise and enjoyment of religion, guaranteed by Articles 10, 40 and 36 of the Declaration of Rights of the Maryland Constitution

11.     Plaintiff also prays for declaratory relief from this Court declaring that SB 1028, both on its face and as-applied, is an unconstitutional violation of the First and Fourteenth Amendments to the United States Constitution and Articles 10, 40 and 36 of the Declaration of Rights of the Maryland Constitution.

12. An actual controversy exists between the parties involving substantial constitutional issues in that SB 1028, both facially and as-applied, violates Plaintiff's and his clients' rights to free speech and free exercise under the First Amendment.

## PARTIES

13. Plaintiff, Christopher Doyle, LPC, LCPC is a licensed psychotherapist who is licensed to practice mental health counseling in Maryland as a clinical professional counselor.

14. Defendant Lawrence J. Hogan, Jr. is the Governor of the State of Maryland and responsible for executing the laws of the State of Maryland, including SB 1028.

15. Defendant Brian E. Frosh is the Attorney General of the State of Maryland and charged with enforcement of the laws of the State of Maryland, including SB 1028.

## JURISDICTION AND VENUE

16. This action arises under the First and Fourteenth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. § 1983. This action also arises under Articles 10, 40, and 36 of the Declaration of Rights of the Maryland Constitution.

17. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367.

18. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants are situated in this judicial district.

19. This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201-02, implemented through Rule 57, Fed. R. Civ. P., and is authorized to grant injunctive relief pursuant to Rule 65, Fed. R. Civ. P.

20. This Court is authorized to grant Plaintiffs' prayer for relief regarding costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988.

## GENERAL ALLEGATIONS

**A.    ENACTMENT OF SB 1028 COUNSELING BAN.**

21.    On May 15, 2018 Defendant Governor Hogan signed SB 1028 which, effective October 1, 2018, added § 1-212.1 to the Health Occupations Article of the Maryland Code. A copy of SB 1028 is attached hereto as <u>Exhibit A</u> and incorporated herein.

22.    The Counseling Ban provides, in pertinent part:

1-212.1.

(A) (1)  IN THIS SECTION, THE FOLLOWING WORDS HAVE THE MEANINGS INDICATED:

(2) (I)  "CONVERSION THERAPY" MEANS A PRACTICE OR TREATMENT BY A MENTAL HEALTH OR CHILD CARE PRACTITIONER THAT SEEKS TO CHANGE AN INDIVIDUAL'S SEXUAL ORIENTATION OR GENDER IDENTITY.

(II) "CONVERSION THERAPY" INCLUDES ANY EFFORT TO CHANGE THE BEHAVIORAL EXPRESSION OF AN INDIVIDUAL'S SEXUAL ORIENTATION, CHANGE GENDER EXPRESSION, OR ELIMINATE OR REDUCE SEXUAL OR ROMANTIC ATTRACTIONS OR FEELINGS TOWARD INDIVIDUALS OF THE SAME GENDER.

(III) "CONVERSION THERAPY" DOES NOT INCLUDE A PRACTICE BY A MENTAL HEALTH OR CHILD CARE PRACTITIONER THAT:

1.  PROVIDES ACCEPTANCE, SUPPORT, AND UNDERSTANDING, OR THE FACILITATION OF COPING, SOCIAL SUPPORT, AND IDENTITY EXPLORATION AND DEVELOPMENT, INCLUDING SEXUAL ORIENTATION–NEUTRAL INTERVENTIONS TO PREVENT OR ADDRESS UNLAWFUL CONDUCT OR UNSAFE SEXUAL PRACTICES; AND

2.  DOES NOT SEEK TO CHANGE SEXUAL ORIENTATION OR GENDER IDENTITY.

(3) "MENTAL HEALTH OR CHILD CARE PRACTITIONER" MEANS:

(I)  A PRACTITIONER LICENSED OR CERTIFIED UNDER TITLE 14, TITLE 17, TITLE 18, TITLE 19, OR TITLE 20 OF THIS ARTICLE; OR

(II) ANY OTHER PRACTITIONER LICENSED OR CERTIFIED UNDER THIS ARTICLE WHO IS AUTHORIZED TO PROVIDE COUNSELING BY THE PRACTITIONER'S LICENSING OR CERTIFYING BOARD.

(B) A MENTAL HEALTH OR CHILD CARE PRACTITIONER MAY NOT ENGAGE IN CONVERSION THERAPY WITH AN INDIVIDUAL WHO IS A MINOR.

(C) A MENTAL HEALTH OR CHILD CARE PRACTITIONER WHO ENGAGED IN CONVERSION THERAPY WITH AN INDIVIDUAL WHO IS A MINOR SHALL BE CONSIDERED TO HAVE ENGAGED IN UNPROFESSIONAL CONDUCT AND SHALL BE SUBJECT TO DISCIPLINE BY THE MENTAL HEALTH OR CHILD CARE PRACTITIONER'S LICENSING OR CERTIFYING BOARD.

(D) NO STATE FUNDS MAY BE USED FOR THE PURPOSE OF:

(1) CONDUCTING, OR REFERRING AN INDIVIDUAL TO RECEIVE CONVERSION THERAPY;

(2) PROVIDING HEALTH COVERAGE FOR CONVERSION THERAPY; OR

(3) PROVIDING A GRANT TO OR CONTRACTING WITH ANY ENTITY THAT CONDUCTS OR REFERS AN INDIVIDUAL TO RECEIVE CONVERSION THERAPY.

(Ex. A at 5–6.)[1]

## B. SB 1028's DUBIOUS RECITALS.

23. The SB 1028 Preamble includes twenty-four dubious recitals, purporting to make an evidentiary case supporting enactment of the total counseling ban. (Ex. A, SB 1028, at 1–4.) The paramount "evidentiary" reference is to the 2009 Report of the American Psychological Association's Task Force on Appropriate Therapeutic Responses to Sexual Orientation (the "APA Report") and an accompanying resolution (the "APA Resolution"). (Ex. A at 1–2.) A true and

---

[1] As codified in the Maryland Code, the letters and Roman numerals of SB 1028's subdivisions are in the lowercase. *See, e.g.,* Md. Code. Ann., Health Occ. § 1-212.1 (West), § 1-212.1(a)(2)(i) ("'Conversion therapy' means . . . .").

correct copy of the APA Report, which incorporates in its Appendix A the APA Resolution, is attached hereto as Exhibit B and incorporated herein. The recitals that follow are references primarily to position papers from various organizations which do not update, supplement, or otherwise augment the APA Report. Indeed, in some cases the position papers patently misrepresent the empirical record described in the APA Report by making causal claims of harm from counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity that the APA Report expressly precluded.

24.     Propped up by the inflated preamble "evidence," Maryland claims an interest "in protecting minors against exposure to serious harm." (Ex. A at 4.)

25.     Maryland's legislative reliance on the APA Report and Resolution and uninformed position papers, as proof of harm caused by counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity, misrepresents the empirical record and ignores the substantial limitations the APA Report noted extensively throughout its findings.

26.     The APA Report specifically noted that "sexual orientation issues in children are **virtually unexamined**." (Ex. B, APA Rep., at 91 (emphasis added).)

27.     The APA Report stated that "[t]here is a lack of published research on (counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity) among children." (*Id.* at 72.)

28.     The APA Report also noted that it could make no conclusions about counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity (sometimes known as Sexual Orientation Change Effort therapy, or SOCE) **for those adolescents who request such counseling**. (*Id.* at 73 ("We found no empirical research on adolescents who request SOCE."); (*id.* at 76 (noting its conclusions are not based on specific studies from individuals,

including minors, who request counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity, and stating its conclusions were thus necessarily limited).)

29.     The APA Report also concluded that "there is a dearth of scientifically sound research on the safety of SOCE. **Early and recent research studies provide no clear indication of the prevalence of harmful outcomes**." (*Id.* at 42 (emphasis added).)

30.     But, from the research the APA Report examined, it found evidence of benefits achieved from counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity, while noting that there was "some" evidence of certain harm for others. (*Id.* at 91.)

31.     Because it noted that there was evidence of benefits for some, the APA Report concluded that "it is still unclear which techniques or methods may or may not be harmful." (*Id.*)

32.     The APA Report also specifically noted that "for some, sexual orientation identity [is] fluid or has an indefinite outcome." (*Id.* at 2.)

33.     In fact, the APA Report found among its studies that "[s]ome individuals report that they went on to lead outwardly heterosexual lives, developing a sexual relationship with an other-sex partner, and adopting a heterosexual identity." (*Id.* at 3.)

34.     The APA Report does not support Defendants' conclusions that counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity causes harm to minors and therefore justifies Defendants' efforts to ban such counseling.

35.     The APA Report itself is also highly partisan and politicized as a result of its researchers. Although many qualified conservative psychologists were nominated to serve on the task force, all of them were rejected.

36.     The director of the APA's Lesbian, Gay and Bisexual Concerns Office, Clinton Anderson, stated that such practitioners were rejected because the group could not take into account what are fundamentally negative religious perceptions of homosexuality because they do not fit into the APA's worldview.

37.     In seeking to reach conclusions in the APA Report, the APA operated with a litmus test when considering task force membership—the only views of homosexuality that were tolerated were those that uniformly endorsed same-sex behavior as a moral good. Thus, from the outset of the task force, it was predetermined that conservative or religious viewpoints would only be acceptable when they fit within their pre-existing worldview.

38.     One example of this is the APA Report's failure to recommend any religious resources that adopt a traditional or conservative approach to addressing conflicts between religious beliefs and sexual orientation. This bias can hardly be said to respect religious diversity and had predictable consequences for how the task force addressed its work.

39.     The APA Report contains a significant contrast between the exceptionally rigorous methodological standards applied to outcomes of counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity and the considerably less rigorous and uneven standards applied to the question of harm. With regard to outcomes of counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity, the APA Report dismisses most of the relevant research because of methodological limitations, which are outlined in great detail (Ex. B, APA Rep., at 26–34.)

40.     Studies pertaining to outcomes of counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity that fall short of the task force's rigorous standards were deemed unworthy of examination and dismissed as containing no evidence of value

to the questions at hand. But, the APA Report appears to adopt very different evidentiary standards for making statements about alleged harms attributed to counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity.

41.    The standard as regards efficacy ruled out allegedly substandard studies as irrelevant; however, no such efficacy standards were employed in considering studies purporting to document harm. Additionally, the APA Report uses the absence of evidence to argue that counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity is unlikely to produce change and thus strongly questions the validity of such counseling, but shows no parallel reticence to endorse affirmative therapy despite acknowledging that such therapy "has not been evaluated for safety and efficacy" (Ex. B, APA Rep., at 91.)

**C.    RELEVANT PERSPECTIVES DISREGARDED BY SB 1028.**

42.    Dr. Nicolas Cummings, former president of the American Psychological Association, has also noted that counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity can provide enormous benefits. A copy of Dr. Cummings article discussing such counseling is attached hereto as Exhibit C and incorporated herein.

43.    Dr. Cummings noted that Defendants' premise for adopting SB 1028 is damaging and incorrect. (Ex. C, Cummings Art., at 1 ("The sweeping allegation that [counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity] must be a fraud because homosexual orientation can't be changed is damaging.").)

44.    Dr. Cummings personally counseled countless individuals in his years of mental health practice, and he reported that hundreds of those individuals seeking to reduce or eliminate their unwanted same-sex attractions, behaviors, or identity were successful. (*Id.* ("Of the patients I oversaw who sought to change their orientation, **hundreds were successful**." (emphasis added)).)

45.     Dr. Cummings said that the assertion that same-sex sexual attractions, behaviors, or identity is one identical inherited characteristic is unsupported by scientific evidence and that "**contending that all same-sex attraction is immutable is a distortion of reality**." (*Id.* at 2 (emphasis added).)

46.     Dr.  Cummings went on to criticize efforts to prohibit counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity as violative of the client's right to self-determination and therapeutic choice. (*Id.* ("Attempting to characterize all sexual reorientation therapy as unethical violates patient choice and gives an outside party a veto over patients' goals for their own treatment.").)

47.     Dr. Cummings concluded that "[a] political agenda shouldn't prevent gays and lesbians who desire to change from making their own decisions." (*Id.*)

48.     Dr. Cummings concluded by condemning political efforts to prohibit counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity as harmful to clients and counselors. (*Id.* ("Whatever the situation at an individual clinic, accusing professionals from across the country who provide treatment to fully informed persons seeking to change their sexual orientation of perpetrating a fraud **serves only to stigmatize the professional and shame the patient**." (emphasis added)).)

49.     The American College of Pediatricians (ACPeds) has noted that the political position statements of numerous mental health organizations, including many relied upon by the City here, have "no firm basis" in evidentiary support. A copy of the ACPeds statement on counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity is attached hereto as <u>Exhibit D</u> and incorporated herein.

50.    ACPeds noted that, "[t]he scientific literature, however, is clear: **Same-sex attractions are more fluid than fixed, especially for adolescents—many of whom can and do change**." (Ex. D, ACPeds Stmt. at 1 (emphasis added).)

51.    ACPeds also noted that "there is a body of literature demonstrating a variety of positive outcomes from SOCE." (*Id.*)

52.    Like Dr. Cummings, ACPeds concluded that counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity is beneficial and that laws like SB 1028, that prohibit such counseling, serve only to impose harm on minors who seek it. (*Id.* ("Banning change therapy or SOCE will threaten the health and well-being of children wanting therapy.").)

### D.    PRE-EXISTING LEGAL AND ETHICAL OBLIGATIONS OF LICENSED CLINICAL PROFESSIONAL COUNSELORS PROTECTING MINOR CLIENTS.

53.    SB 1028 falsely asserts that the statute is necessary to protect minors from the purported harms of counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity (Ex. A at 4.)

54.    Prior to SB 1028, licensed clinical professional counselors in Maryland such as Plaintiff were already subject to legal and ethical obligations imposed by Title 17 of the Health Occupations Article of the Maryland Code and Title 10, Subtitle 58 of the Maryland Code of Regulations.

55.    Pre-existing law already prohibited licensed clinical professional counselors like Plaintiff from "[making any] willful misrepresentation while counseling or providing therapy" and "[violating] the code of ethics adopted by the [State Board of Professional Counselors and Therapists]." Md. Code Ann., Health Occ. § 17-509 (West).

56.     Pre-existing law already required licensed clinical professional counselors like Plaintiff to "[p]ractice only within the boundaries of a counselor's competence, based on education, training, supervised experience, and professional credentials." Md. Code Regs. 10.58.03.03.A(1).

57.     Pre-existing law already required licensed clinical professional counselors like Plaintiff to "[i]nform clients of the purposes, goals, techniques, procedures, limitations, potential risks, and benefits of services to be performed . . . ." Md. Code Regs. 10.58.03.05.A(1)(a).

58.     Pre-existing law already prohibited licensed clinical professional counselors like Plaintiff from "[p]lac[ing] or participat[ing] in placing clients in positions that may result in damaging the interests and the welfare of clients, employees, employers, or the public" or "[a]bandon[ing] or neglect[ing] clients in counseling." Md. Code Regs. 10.58.03.05.A(2)(a), (c).

59.     Pre-existing law already prohibited licensed clinical professional counselors like Plaintiff from "plac[ing] advertisements or mak[ing] public statements that . . . [c]ontain false, fraudulent, misleading, deceptive, or unfair statements or information . . . ." Md. Code Regs. 10.58.03.07.A(3)(a).

60.     Pre-existing law already required licensed clinical professional counselors like Plaintiff to "[p]rovide sufficient information to a client to allow a client to make an informed decision regarding treatment, including the following: (a) The purpose and nature of an evaluation or treatment process; (b) Additional options to the proposed treatment; (c) Potential reactions to the proposed treatment . . . ." Md. Code Regs. 10.58.03.08.A(5).

61.     In addition to the compulsory, legal ethical standards regulating licensed clinical professional counselors like Plaintiff, Plaintiff also subscribes and submits to the ethical practice guidelines established by the Alliance for Therapeutic Choice and Scientific Integrity (the "Alliance") for the practice of Sexual Attraction Fluidity Exploration in Therapy (SAFE-T), which

is defined as the client-centered exploration of sexual attraction fluidity among clients reporting unwanted same-sex attractions utilizing established psychotherapeutic modalities.

62.     SAFE-T Guideline 1 provides, "Clinicians are encouraged to recognize the complexity and limitations in understanding the etiology of same-sex attractions."

63.     SAFE-T Guideline 2 provides, "Clinicians strive to understand how their values, attitudes, and knowledge about homosexuality affect their assessment of and intervention with clients who present with unwanted same-sex attractions and behavior."

64.     SAFE-T Guideline 3 provides, "Clinicians are encouraged to respect the value of clients' religious faith and refrain from making disparaging assumptions about their motivations for pursuing SAFE-T."

65.     SAFE-T Guideline 4 provides, "Clinicians strive to respect the dignity and self-determination of all their clients, including those who seek to change unwanted same-sex attractions and behavior."

66.     SAFE-T Guideline 5 provides, "At the outset of treatment, clinicians strive to provide clients with accurate information on SAFE-T processes and outcomes, sufficient for informed consent."

67.     SAFE-T Guideline 6 provides, "Clinicians are encouraged to be aware of the legal environment in their state or local jurisdiction with respect to the presence of therapy bans and to seek competent legal counsel as appropriate under the circumstances."

68.     SAFE-T Guideline 7 provides, "Clinicians are encouraged to utilize accepted psychological approaches to psychotherapeutic interventions that minimize the risk of harm when serving clients with unwanted same-sex attractions."

69.     SAFE-T Guideline 8 provides, "Clinicians are encouraged to be knowledgeable about the psychological and behavioral conditions which often accompany same-sex attractions and offer relevant treatment services to help clients manage these issues."

70.     SAFE-T Guideline 9 provides, "Clinicians strive to understand the difficult pressures (e.g., culture, religious community) which clients with unwanted same-sex attractions confront."

71.     SAFE-T Guideline 10 provides, "Clinicians are encouraged to acknowledge and accommodate the unique experiences of women who experience SSA [same-sex attraction]."

72.     SAFE-T Guideline 11 provides, "Clinicians are encouraged to recognize the special difficulties and risks which exist for youth who experience same-sex attractions."

73.     SAFE-T Guideline 12 provides, "Clinicians make reasonable efforts to familiarize themselves with relevant medical, mental health, spiritual, and religiously oriented resources that can support clients in their pursuit of attraction fluidity and change."

74.     SAFE-T Guideline 13 provides, "Clinicians are encouraged to increase their knowledge and understanding of the literature relevant to clients who request SAFE-T, and seek continuing education, training, supervision, and consultation to improve their clinical work in this area."

75.     Unlike the outright ban on counseling imposed by SB 1028, the SAFE-T Guidelines are actually consistent with the approaches commended by the APA Report.

76.     Thus, existing legal and ethical obligations regulating licensed clinical professional counselors, both compulsory and voluntary, demonstrate that Maryland's stated rationales for adopting SB 1028 are fallacious, pretextual, and unsupported by any governmental interest.

E.     **VAGUENESS OF SB 1028.**

77.     Despite SB 1028's presumptions that same-sex attractions, behaviors, or identity are easily understandable and measurable, it is widely understood that there are actually tremendous difficulties in measuring sexual orientation or gender identity.

78.     Because of the difficulty in measuring sexual orientation or gender identity, the prohibitions in SB 1028 are hopelessly vague and leave Plaintiff guessing at what practices are permitted or prohibited.

79.     Even in Defendants' primarily cited study, the APA Report, the difficulty in understanding exactly what is prohibited by SB 1028 is recognized. The APA Report explains that "**[s]ame-sex sexual attractions occur in the context of a variety of sexual orientations and sexual orientation identities**, and for some, **sexual orientation identity** (i.e., individual or group membership and affiliation, self-labeling) **is fluid or has an indefinite outcome**." (Ex. B, APA Rep., at 2 (emphasis added).)

80.     SB 1028 prohibits Plaintiff under any circumstances from engaging in any practice that seeks to reduce or eliminate same-sex sexual attractions, behaviors, or identity. This prohibition is virtually impossible for Plaintiff to comply with because it is well understood in the mental health profession, and conceded by Defendants' own references, that sexual orientation and gender identity are difficult to define and encompass a number of factors, including behavior, practices, identity, attractions, sexual fantasy, romantic attractions, and erotic desires.

81.     Given that sexual orientation is considered "fluid," even among the references the Defendants cite in SB 1028, Plaintiff is left to guess at what counseling practices might constitute a violation of the Ordinance.

82.     SB 1028 does not specify which clients would be classified as seeking to "change" and those that would merely be deemed conforming their behavior with their original "sexual

orientation." As clients do not always present wanting immediately to "change," Plaintiff and other counselors are left to guess at which point their counseling practices would be deemed to constitute efforts to reduce or eliminate unwanted same-sex attractions.

83.    Sexual orientation is also nearly impossible to measure, and there is no agreement on whether sexual orientation is a categorical construct or exists on a continuum. A client's motives, attractions, identification, and behaviors vary over time and circumstances with respect to one another, which makes them dynastically changing features of a client's concept of self and sexual orientation.

84.    Despite the difficulty in measuring sexual orientation and its fluid and changing nature, Plaintiffs must now put their professional licenses in jeopardy when even discussing something that could be perceived as "changing" sexual orientation or identity.

85.    SB 1028 also permits licensed counselors to provide counseling that provides "acceptance, support, and understanding" of a client's unwanted same-sex attractions, behaviors, or identity. This presents another major source of confusion, uncertainty, and vagueness for Plaintiff.

86.    Under SB 1028, it is impossible for Plaintiff to provide acceptance and support to a client who comes in for counseling and requests assistance in seeking to eliminate unwanted same-sex attractions, behaviors, or identity.

87.    Some of Plaintiff's clients initially do not request counseling specifically to reduce or eliminate their unwanted same-sex attractions, behaviors, or identity, but instead want help and counseling to understand the sources, causes, and origins of their distress over such feelings.

88.    During the course of such counseling, and without ever specifically setting out to reduce or eliminate unwanted same-sex attractions, behaviors, or identity, some clients will

experience a change in their sexual attractions, behaviors, or identity, and this is true despite never specifically seeking to experience such a change or eliminate their unwanted feelings.

89.     Plaintiff is left to guess at whether counseling simply discussing the confusion, anxiety, conflict, or stress clients feel about their unwanted same-sex attractions, behaviors, or identity, without specifically seeking to reduce or eliminate such feelings, runs afoul of SB 1028's prohibitions.

90.     As the APA Report upon which SB 1028 relies admits, same-sex attractions, behaviors, or identities are fluid and can often spontaneously disappear, particularly in minors. If Plaintiff is merely counseling an individual to understand the origins of his attractions or helping him to understand and resolve the conflict with his religious beliefs, Plaintiff is unable to know whether such counseling may result in a spontaneous change for the minor client, even though it was not the topic or goal of the counseling.

91.     Plaintiff is left to guess at what topics are permissible when a minor client presents with anxiety, confusion, distress, or conflict over his unwanted same-sex attractions, behaviors, or identity, and SB 1028 provides no clear guideposts on such issues.

F.     **INDIVIDUALIZED EXEMPTIONS IN SB 1028.**

92.     SB 1028 also establishes a system of individualized exemptions.

93.     When a minor client who is experiencing unwanted change in sexual orientation or gender identity through, for example, unwanted though increasing same-sex or cross-gender attractions, feelings, behaviors, or identity, SB 1028 prohibits counseling to assist the client in changing, reducing, or eliminating the unwanted attractions, feelings, behaviors, or identity. (Ex. A, SB 1028, at 5–6.)

94.     On its face, however, SB 1028 permits counseling that affirms and commends "acceptance, support, and understanding, or the facilitation of coping, social support, and identity

exploration and development" towards increasing same-sex or cross-gender attractions, feelings, behaviors, or identity, even if such attractions, feelings, behaviors, or identity are unwanted by the client. (*Id.*)

95.     Thus, SB 1028 prohibits counseling that affirms a minor client's desire to change his developing sexual orientation or related attractions, feelings, behaviors, or identity to conform to his own concept of self and biological identity, but provides an individual exemption for counseling on the same subject matter that affirms and commends the development of a changing sexual orientation.

96.     Thus also, SB 1028 exempts counseling that affirms and commends a minor's voluntary transitioning from one gender identity to another, but prohibits counseling that affirms a minor's seeking to eliminate gender identity confusion or to de-transition to conform his gender identity to his own concept of self and biological identity.

### G.    PLAINTIFF'S VOLUNTARY TALK THERAPY PRACTICE FOR MINORS WITH SEXUAL AND GENDER IDENTITY CONFLICTS.

97.     Plaintiff is a licensed psychotherapist who is licensed to practice mental health counseling in Maryland as a clinical professional counselor.

98.     Plaintiff earned his master's degree in professional counseling from Liberty University, and holds a bachelor's degree in political science and history from Grove City College

99.     Plaintiff is the Executive Director of the Institute for Healthy Families, a non-profit Judeo-Christian therapeutic organization in the Washington, D.C. area, where he also maintains a counseling practice.

100.     Plaintiff is also a leader in the #TherapyEquality movement of Equality and Justice for All, and the co-founder of the National Task Force for Therapy Equality.

101.    Plaintiff has devoted most of his professional life to providing counseling to young people and their parents who are seeking help for unwanted same-sex attractions, the type of counseling now banned by SB 1028.

102.    As part of his commitment to helping children and families dealing with sexual and gender identity concerns, Plaintiff created several experiential therapeutic retreats, including the Breakthrough Healing Weekend for Men with Unwanted Same-Sex Attractions, Key to Your Child's Heart Healing Weekend for Fathers, Key to Your Child's Heart Healing Weekend for Mothers, and Break Free Your Inner Child Healing Weekend.

103.    Through the weekend retreats and his counseling practice, Plaintiff has helped and is continuing to help children with unwanted same-sex attractions and gender identity conflicts, and their parents, by addressing the underlying issues that lead to the achievement of their therapeutic goals.

104.    Plaintiff's current practice includes voluntary counseling of minors who are experiencing unwanted same-sex attractions, behaviors, and identity.

105.    Plaintiff has five minor clients he is counseling with unwanted same-sex attractions and/or gender identity conflicts, and roughly a dozen families with minor children who are consulting with him regarding their children's unwanted same-sex attractions and/or gender identity conflicts, who have been seeing improvement and progress toward their therapeutic goals.

106.    These minor clients will suffer significant mental health consequences if they are required to halt their counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity because of SB 1028, which consequences potentially include anxiety, depression, and suicidal ideation.

107.    Many of Plaintiff's clients who desire counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity profess to be Christians, Mormons, Jews, or Muslims with sincerely held religious beliefs that homosexuality is harmful and destructive and therefore seek counseling in order to live a lifestyle that is in congruence with their faith and to conform their identities, concepts of self, attractions, and behaviors to their sincerely held religious beliefs.

108.    Prior to engaging in counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity with any client, Plaintiff provides the client with an informed consent form and requires the client to review and sign the form prior to commencing counseling. This informed consent form outlines the nature of counseling (which Plaintiff identifies as "Sexual/Gender Identity Affirming Therapy"), explains the controversial nature of such counseling, including the fact that some therapists do not believe sexual orientation or gender identity can or should be changed, and informs the client of the potential benefits and risks associated with counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity. In Plaintiff's informed consent form, he quotes research both from the 2009 APA Report and from the 2009 research overview of the National Association for Research and Therapy of Homosexuality (NARTH), titled "What Research Shows," which summarizes decades of research on the efficacy of counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity.

109.    Plaintiff does not coerce his clients into engaging in counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity, but respects the clients' right of self-determination and treats each client with unconditional positive respect regardless of the client's concept of self or feelings of unwanted same-sex attractions, behaviors, or identity.

110.    Plaintiff does not engage in aversive techniques, nor is he aware of any practitioner who engages in such practices with clients seeking to reduce or eliminate their unwanted same-sex attractions, behaviors, or identity.

111.    In his practice, Plaintiff helps clients with their unwanted same-sex attractions, behaviors, and identity by talking with them about root causes, about gender roles and identities, and about their anxieties and confusion that arise from these attractions. Through the use of standard psychological counseling methods, including therapeutic methods to resolve traumatic experiences, clients' unwanted same-sex attractions, behaviors, and identities can dissipate or resolve when therapy is successfully delivered.

112.    Speech is the primary tool that Plaintiff uses in his counseling with minors seeking to reduce or eliminate their unwanted same-sex attractions, behaviors, or identity. With some clients, Plaintiff also administers a standard psychological instrument to resolve trauma that provides soothing (not aversive), tactile bi-lateral stimulation to the brain called Eye-Movement Desensitization and Reprocessing (EMDR). This tactile bi-lateral stimulation is accompanied by speech as he helps clients resolve traumatic memories and experiences that may have led to the development of unwanted same-sex attractions, behaviors, or identity. EMDR is a widely-used, therapeutic best-practice, employed and endorsed by all mainstream licensed counselors and found in the psychological literature to be highly efficacious to reprocess and resolve trauma. While using EMDR, Plaintiff sits across from his clients and talks to them about past traumatic experiences while they reprocess and resolve these memories and experiences, which helps them reach their goals and objectives while honoring their religious beliefs, desires, and identities.

113.    Plaintiff employs speech and standard psychological instruments and practices to help clients understand and identify their anxiety, distress, and/or confusion regarding their

attractions, behaviors, or identity and then to help each client formulate the method of counseling that will most benefit that particular client.

114.    Often times, a client is not ready or does not desire immediately to begin seeking to reduce or eliminate unwanted same-sex attractions, behaviors, or identity. When that is the case, Plaintiff focuses on helping the client and parents to heal any wounds or frustrations and to begin working on loving and accepting the minor client, despite any challenges that arise from the unwanted same-sex attractions, behaviors, or identity.

115.    Throughout SB 1028, the position statements refer to counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity as having the single goal of changing an individual's sexual orientation or gender identity. But, Plaintiff does not begin counseling with any predetermined goals other than those that the clients themselves identify and set. This is consistent with the clients' fundamental right of self-determination, and is consistent with the approach recommended by the APA Report. (Ex. B, APA Rep., at 60 (recommending "affirmative approach . . . supportive of clients' identity development without an a priori treatment goal for how clients identify or live out their sexual orientation), 79–80 (recommending "approaches [that] support children and youth in identity exploration and development without seeking predetermined outcomes" for "children and adolescents who present a desire to change their sexual orientation or their behavioral expression of their sexual orientation, or both, or whose guardian expresses a desire for the minor to change").)

116.    Plaintiff has never received any complaint or report of harm from any of his clients seeking and receiving counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity, including the many minors that he has counseled.

117.     Many of the position statements and studies referenced in SB 1028 improperly attempt to conflate aversive and involuntary practices allegedly used by some in the past with the voluntary, non-aversive approaches that Plaintiff and all ethical practitioners use in their counseling and therapy practices with clients who wish to reduce or eliminate same-sex sexual attractions, behaviors, or identity. SB 1028 indiscriminately bans both types.

118.     The presumption of SB 1028 that all such counseling from Plaintiff is premised on the notion that homosexuality is an illness, defect, or shortcoming does not accurately reflect Plaintiff's practices, and it ignores the fact that Plaintiff seeks to treat the anxiety, distress, and/or confusion that arises from a client's unwanted same-sex attractions, behaviors, or identity. Plaintiff has never publicly stated that he believes homosexuality or same-sex attractions is a mental illness in need of a "cure."

119.     The presumption of SB 1028 that Plaintiff seeks to "cure" clients of same-sex attractions is false because Plaintiff seeks only to assist clients with their stated desires and objectives in counseling, which sometimes include reducing or eliminating unwanted same-sex attractions. In most cases, clients do not even identify as "homosexual" or "gay" or "lesbian," but rather believe they are heterosexual and experiencing conflicts with their heterosexual identities due to traumatic or other experiences that have caused unwanted same-sex attractions or behaviors.

120.     The presumption of SB 1028 that counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity result from Plaintiff's viewing homosexuality as an "illness" does not reflect the truth of such counseling, and it ignores the point of mental health counseling in general.

121.     The only relevant consideration in Plaintiff's counseling is that same-sex attractions and/or behaviors are at variance with a client's self-described heterosexual identity, causing the

client anxiety or distress, and that the client seeks to eliminate the attractions or behaviors that lead to such anxiety or distress.

122.    This is the same relevant consideration in all forms of mental health counseling, and is true of many issues for which clients seek counseling, including many that are not mental illnesses but that nevertheless impose great stress, anxiety, confusion, or grief on the client.

123.    As a psychotherapist licensed in Maryland who engages in counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity, Plaintiff is subject to potential professional discipline under SB 1028.

124.    SB 1028 prohibits Plaintiff from engaging in counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity with his minor clients, and requires Plaintiff to discontinue ongoing counseling despite the clients' and their parents' consent and requests to continue, or face penalties under the statute.

125.    SB 1028 will prevent Plaintiff's clients from continuing to progress in their individually-determined course of counseling, and from continuing to receive counseling in accordance with their sincerely held religious beliefs. In addition, SB 1028 will adversely affect future clients. Plaintiff periodically receives requests for therapy for both unwanted homosexual attractions and gender identity confusion, and he and other licensed professionals in Maryland will be prohibited from providing, and the clients prohibited from receiving, help they want and need.

126.    SB 1028 also leaves Plaintiff on an irresolvable collision course with his ethical requirements as a licensed clinical professional counselor. According to Maryland Code of Regulations 10.58.03.05.A(2)(c), abandonment of a client is unethical. If a client wants to continue therapy that could be regarded as violating SB 1028 and Plaintiff does not continue the treatment because of the sanctions of SB 1028, it could be considered abandonment under the legal ethical

regulations applicable to Plaintiff. Furthermore, halting counseling when a client requests assistance with changing unwanted same-sex attractions, behaviors, or identity is contraindicated by the APA Report. (Ex. B, APA Rep., at 56.) Therefore, Plaintiff must either violate SB 1028 or violate his legal ethical obligations; he cannot comply with both.

### H.   IRREPARABLE HARM TO PLAINTIFF AND HIS CLIENTS.

127.   Consistent with his First Amendment rights, Plaintiff wants to offer his counseling, including counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity, to clients and potential clients, including minors.

128.   Consistent with his First Amendment rights, Plaintiff would like to be able to inform religious leaders, organizations, and ministries that there is help from a LMHP with expertise in this area and that it is available to individuals desiring assistance in the area of unwanted same-sex attractions, behaviors, and identity.

129.   Because of SB 1028, Plaintiff is prohibited from offering voluntary counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity to minor clients and potential clients.

130.   Because of SB 1028, Plaintiff is prohibited from engaging in counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity with minor clients and potential clients, including minors who desire such counseling.

131.   Because of SB 1028, Plaintiff is restricted from engaging in constitutionally protected speech, including advertising his counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity to minor clients and potential clients.

132.   Because of SB 1028, Plaintiff has been chilled in his constitutionally protected expression.

133.    Because of SB 1028, Plaintiff is prohibited from engaging in constitutionally protected speech, including providing counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity to willing clients and potential clients in violation of his clients and potential clients' First Amendment right to receive information.

134.    Because of SB 1028, Plaintiff has been and will be forced to deny voluntary counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity to his clients and potential clients in violation of his and his clients' sincerely held religious beliefs.

135.    Because of SB 1028, Plaintiff has been and will be forced to deny counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity to willing clients and potential clients in violation of the clients' fundamental rights to self-determination.

136.    Because of SB 1028, Plaintiff has suffered, is suffering, and will continue to suffer ongoing, immediate, and irreparable injury to his cherished First Amendment right to freedom of speech.

137.    Because of SB 1028, Plaintiff has suffered, is suffering, and will continue to suffer ongoing, immediate, and irreparable injury to his cherished First Amendment right to free exercise of religion.

138.    Because of SB 1028, Plaintiff's clients have suffered, are suffering, and will continue to suffer ongoing, immediate, and irreparable injury to their cherished First Amendment rights to receive information.

139.    Because of SB 1028, Plaintiff's current minor clients are prohibited from receiving counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity that the clients desire to obtain from a licensed professional with expertise in this area.

140.    Plaintiff's minor clients have thus suffered, are suffering, and will continue to suffer ongoing, immediate, and irreparable injury to their cherished First Amendment rights to receive information.

141.    Because of SB 1028, Plaintiff's clients have suffered, are suffering, and will continue to suffer ongoing, immediate, and irreparable injury to their cherished First Amendment rights to free exercise of religion.

142.    Plaintiff's minor clients face substantial obstacles to bringing the claims herein, including their fear of embarrassment, stigmatization, and opprobrium from publicly disclosing not only their needs and desires to receive mental health counseling in general, but also their needs and desires to receive specifically counseling that involves intimate details of their development, growth, and sexuality, and that the State of Maryland officially abhors.

143.    Plaintiff and his clients and potential clients have no adequate remedy at law to protect the ongoing, immediate, and irreparable injury to their cherished First Amendment liberties.

### COUNT I
### SB 1028 VIOLATES PLAINTIFF'S
### RIGHT TO FREEDOM OF SPEECH UNDER THE FIRST AMENDMENT.

144.    Plaintiff hereby reallge and adopt by this reference each and every allegation in paragraphs 1–143.

145.    The Free Speech Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Plaintiff's freedom of speech.

146.    SB 1028, on its face and as applied, is an unconstitutional prior restraint on Plaintiff's speech.

147.   SB 1028, on its face and as applied, unconstitutionally discriminates on the basis of viewpoint.

148.   SB 1028, on its face and as applied, authorizes only one viewpoint on counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity by forcing Plaintiff to present only one viewpoint on the otherwise permissible subject matters of sexual orientation, gender identity and same-sex attractions, behaviors, and identity. SB 1028 also forces Plaintiff's clients and their parents to receive only one viewpoint on these otherwise permissible subject matters.

149.   SB 1028, on its face and as applied, discriminates against Plaintiff's speech on the basis of the content of the message he offers, and that Plaintiff's clients seek to receive.

150.   Maryland lacks any compelling, legitimate, significant, or even rational governmental interests to justify SB 1028's infringement of the right to free speech.

151.   SB 1028, on its face and as applied, is not the least restrictive means to accomplish any permissible government purpose sought to be served by the law.

152.   Informed consent provisions outlining required disclosures prior to engaging in counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity with a minor would have been far less restrictive of Plaintiff's speech, and mental health counseling organizations have urged legislatures to adopt informed consent provisions. A copy of the letter to the California legislature from multiple California mental health organizations concerning legislation virtually identical to SB 1028 is attached as Exhibit E and incorporated herein.

153.   SB 1028 does not leave open ample alternative channels of communication for Plaintiffs.

154.   SB 1028, on its face and as applied, is irrational and unreasonable, and imposes unjustifiable and unreasonable restrictions on constitutionally protected speech.

155.   SB 1028, on its face and as applied, unconstitutionally chills and abridges the right of Plaintiff to freely communicate information pertaining to unwanted same-sex sexual attractions, behaviors, or identity.

156.   SB 1028, on its face and as applied, unconstitutionally chills and abridges the right of Plaintiff's clients to freely receive information pertaining to unwanted same-sex sexual attractions, behaviors, or identity.

157.   SB 1028's prohibitions on licensed mental health counselors' offering voluntary counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity that could change, reduce, or otherwise address a minor client's unwanted same-sex attractions, behaviors, or identity, which would include a referral to someone who offers such counseling, on its face and as applied, abridges Plaintiff's right to offer and Plaintiff's clients' right to receive information.

158.   SB 1028 vests unbridled discretion in government officials to apply or not apply SB 1028 in a manner that restricts free speech, and subjects Plaintiff to ethical code violations.

159.   SB 1028, on its face and as applied, is impermissibly vague as it requires licensed professionals subject to its dictates and government officials tasked with enforcing them to guess at their meaning and differ as to their application.

160.   SB 1028, on its face and as applied, is under-inclusive by limiting the prohibition on using counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity for minors.

161.    SB 1028, on its face and as applied, is unconstitutionally overbroad as it chills and abridges the free speech rights of all licensed mental health providers in Maryland who use counseling techniques to provide assistance to minors seeking to reduce or eliminate their unwanted same-sex attractions, behaviors, or identity, and does not leave open alternative methods of communication.

162.    SB 1028's violations of Plaintiff's right of free speech have caused, are causing, and will continue to cause Plaintiff and his clients to suffer undue and actual hardship and irreparable injury.

163.    Plaintiff has no adequate remedy at law to correct the continuing deprivation of his most cherished constitutional liberties.

WHEREFORE, Plaintiff respectfully prays for the relief against Defendants as hereinafter set forth in his prayer for relief.

## COUNT II
### SB 1028 VIOLATES PLAINTIFF'S CLIENTS'
### FIRST AMENDMENT RIGHT TO RECEIVE INFORMATION

164.    Plaintiff realleges and adopts by this reference each and every allegation in paragraphs 1–163.

165.    The First Amendment, as applied to the states by the Fourteenth Amendment, protects an individual's freedom of speech, and the corollary right to receive information.

166.    Plaintiff's clients have sincerely held religious beliefs that shape their desire to receive counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity, and the information that Plaintiff can provide on reducing or eliminating unwanted same-sex attractions, behaviors, and identity.

167.     SB 1028 prevents Plaintiff's clients from receiving counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity and deprives them of the opportunity even to obtain information about such counseling from LMHPs.

168.     Maryland lacks any compelling, legitimate, significant, or even rational governmental interests to justify SB 1028's infringement of the right to receive information.

169.     Even if SB 1028 were supported by any compelling or other governmental interest, it is not narowly tailored to achieve any such purpose and therefore violates Plaintiff's clients' fundamental rights to receive information.

170.     SB 1028, on its face and as applied, is not the least restrictive means to accomplish any permissible governmental purpose sought to be served by the law.

171.     SB 1028's violations of the fundamental rights of Plaintiffs' clients have caused, are causing, and will continue to cause undue and actual hardship and irreparable injury.

172.     Plaintiff's clients have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

WHEREFORE, Plaintiff prays for the relief against Defendants as hereinafter set forth in his prayer for relief.

## <u>COUNT III</u>
## SB 1028 VIOLATES PLAINTIFF'S RIGHT TO FREE EXERCISE OF RELIGION

173.     Plaintiff realleges and adopts by this reference each and every allegation in paragraphs 1–172.

174.     The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Plaintiff's right to free exercise of religion.

175.    Many of Plaintiff's clients have sincerely held religious beliefs that same-sex sexual attractions, behaviors, or identity are wrong, and they seek to resolve these conflicts between their religious beliefs and their attractions in favor of their religious beliefs.

176.    Plaintiff also has sincerely held religious beliefs motivating him to provide spiritual counsel and assistance to his clients who seek such counsel. Plaintiff sincerely holds religious beliefs that he should counsel clients on the subject matter of same-sex attractions, behaviors, or identity from a religious viewpoint that aligns with his religious beliefs and those of his clients when requested by his clients.

177.    SB 1028, on its face and as applied, targets Plaintiff's and his clients' sincerely held religious beliefs regarding human nature, gender, ethics, morality, and counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity, which beliefs are informed by the Torah, Bible, Book of Mormon, and Koran and constitute central components of their faith. SB 1028 causes them a direct and immediate conflict with their religious beliefs by prohibiting them from offering, referring, and receiving counseling that is consistent with their religious beliefs.

178.    SB 1028, on its face and as applied, has impermissibly burdened Plaintiff's and his clients' sincerely held religious beliefs and compels them either to change those religious beliefs or to act in contradiction to them. SB 1028 has forced Plaintiff and his clients to choose between the teachings and requirements of their sincerely held religious beliefs and the value system imposed by the State of Maryland.

179.    SB 1028 places Plaintiff and his clients in an irresolvable conflict between compliance with their sincerely held religious beliefs and compliance with SB 1028.

180.    SB 1028 also puts substantial pressure on Plaintiff and his clients to violate their sincerely held religious beliefs by ignoring the fundamental tenets of their faith concerning same-sex attractions, behaviors, and identity.

181.    SB 1028, on its face and as applied, is neither neutral nor generally applicable, but rather specifically and discriminatorily targets the religious speech, beliefs, and viewpoint of those individuals who believe change is possible, and thus expressly constitutes a substantial burden on sincerely held religious beliefs that are contrary to the State-approved viewpoints on same-sex attractions, behavior, and identity.

182.    The State's purported interests in protecting minors from the so-called harm of counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity are unsubstantiated and do not constitute compelling governmental interests.

183.    No compelling, legitimate, significant, or even rational governmental interest justifies the burdens Maryland imposes on Plaintiff's and his clients' rights to the free exercise of religion.

184.    Even if SB 1028 were supported by any compelling governmental interest, the Counseling Ban is not the least restrictive means to accomplish any permissible governmental purpose which SB 1028 ostensibly seeks to serve.

185.    SB 1028, both on its face and as-applied, evidences Maryland's failure and refusal to accommodate Plaintiff's sincerely held religious beliefs.

186.    SB 1028, both on its face and as-applied, specifically targets religion for disparate treatment and has set up a system of individualized exemptions that permits certain counseling on same-sex attractions, behaviors, or identity while denying religious counseling on the same subjects.

187.    SB 1028, both on its face and as-applied, constitutes a religious gerrymander.

188.    SB 1028's violations of Plaintiff's and his clients' rights to free exercise of religion have caused, are causing, and will continue to cause Plaintiff and his clients to suffer undue and actual hardship and irreparable injury.

189.    Plaintiff has no adequate remedy at law to correct the continuing deprivation of his most cherished constitutional liberties.

WHEREFORE, Plaintiff respectfully prays for the relief against Defendants as hereinafter set forth in his prayer for relief.

**<u>COUNT IV</u>**
**SB 1028 VIOLATES PLAINTIFF'S RIGHT TO**
**LIBERTY OF SPEECH UNDER ARTICLES 10 AND 40 OF THE**
**DECLARATION OF RIGHTS OF THE CONSTITUTION OF MARYLAND**

190.    Plaintiff realleges and adopts by this reference each and every allegation in paragraphs 1–189.

191.    Article 10 of the Declaration of Rights of the Constitution of Maryland states:

> [We, the People of the State of Maryland, grateful to Almighty God for our civil and religious liberty, and taking into our serious consideration the best means of establishing a good Constitution in this State for the sure foundation and more permanent security thereof, declare:]

> That freedom of speech and debate, or proceedings in the Legislature, ought not to be impeached in any Court of Judicature.

192.    Article 40 of the Declaration of Rights of the Constitution of Maryland states:

> [We, the People of the State of Maryland, grateful to Almighty God for our civil and religious liberty, and taking into our serious consideration the best means of establishing a good Constitution in this State for the sure foundation and more permanent security thereof, declare:]

> That the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to speak, write and

publish his sentiments on all subjects, being responsible for the
abuse of that privilege.

193.    SB 1028, on its face and as applied, is an unconstitutional prior restraint on
Plaintiff's speech.

194.    SB 1028, on tits face and as applied, unconstitutionally discriminates on the basis
of viewpoint.

195.    SB 1028, on its face and as applied, authorizes only one viewpoint on and unwanted
same-sex sexual attractions, behaviors, or identity and counseling to eliminate, reduce, or resolve
unwanted same-sex attractions, behaviors, or identity and forces Plaintiff to present only one
viewpoint on the otherwise permissible subject matters of same-sex attractions, behaviors, or
identity. SB 1028 also forces Plaintiff's clients to receive only one viewpoint on these otherwise
permissible subject matters.

196.    SB 1028, on its face and as applied, discriminates against Plaintiff's speech on the
basis of the content of the message he offers or that Plaintiff's clients seek to receive.

197.    Maryland lacks any compelling, legitimate, significant, or even rational
governmental interest to justify SB 1028's infringements of the right to free speech.

198.    SB 1028, on its face and as applied, is not the least restrictive means to accomplish
any permissible governmental purpose ostensibly sought to be served by the law.

199.    Informed consent provisions outlining required disclosures prior to engaging in
counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity
with a minor would have been far less restrictive of Plaintiff's speech, and mental health
counseling organizations have urged legislatures to adopt informed consent provisions. (Ex. E,
Cal. Ltr.)

200.     SB 1028 does not leave open ample alternative channels of communication for Plaintiff.

201.     SB 1028, on its face and as applied, is irrational and unreasonable and imposes unjustifiable and unreasonable restrictions on constitutionally protected speech.

202.     SB 1028, on its face and as applied, unconstitutionally chills and abridges the right of Plaintiff to freely communicate information pertaining to unwanted same-sex sexual attractions, behaviors, or identity.

203.     SB 1028, on its face and as applied, unconstitutionally chills and abridges the rights of Plaintiff's clients to freely receive information pertaining to unwanted same-sex sexual attractions, behaviors, or identity.

204.     SB 1028's prohibitions on licensed mental health counselors' offering voluntary counseling that could change, reduce, or otherwise address a minor client's unwanted same-sex attractions, behaviors, or identity, which would include a referral to someone who offers counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity, on its face and as applied, abridges Plaintiff's rights to offer and Plaintiff's clients' rights to receive information.

205.     SB 1028 vests unbridled discretion in government officials, including Defendants, to apply or not apply SB 1028 in a manner that restricts free speech, and subjects Plaintiff to ethical code violations.

206.     SB 1028, on its face and as applied, is impermissibly vague as it requires licensed professionals subject to its dictates and government officials tasked with enforcing them to guess at their meaning and differ as to their application.

207.    SB 1028, on its face and as applied, is under-inclusive by limiting the prohibition on counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity to minors.

208.    SB 1028, on its face and as applied, is unconstitutionally overbroad as it chills and abridges the free speech rights of all LMHPs licensed in Maryland who use voluntary counseling techniques have the potential to help minors reduce or eliminate their unwanted same-sex attractions, behaviors, or identity and does not leave open alternative methods of communication.

209.    SB 1028's violation of Plaintiff's rights of free speech has caused, is causing, and will continue to cause Plaintiff and his clients to suffer undue and actual hardship and irreparable injury.

210.    Plaintiff has no adequate remedy at law to correct the continuing deprivation of his most cherished constitutional liberties.

WHEREFORE, Plaintiff respectfully prays for the relief against Defendants as hereinafter set forth in his prayer for relief.

## COUNT V
## SB 1028 VIOLATES PLAINTIFF'S RIGHT TO
## FREE EXERCISE AND ENJOYMENT OF RELIGION UNDER ARTICLE 36 OF THE
## DECLARATION OF RIGHTS OF THE CONSTITUTION OF MARYLAND

211.    Plaintiff realleges and adopts by this reference each and every allegation in paragraphs 1–210.

212.    Article 36 of the Declaration of Rights of the Maryland Constitution states, in pertinent part:

> [We, the People of the State of Maryland, grateful to Almighty God for our civil and religious liberty, and taking into our serious consideration the best means of establishing a good Constitution in this State for the sure foundation and more permanent security thereof, declare:]

That as it is the duty of every man to worship God in such manner as he thinks most acceptable to Him, all persons are equally entitled to protection in their religious liberty; wherefore, no person ought by any law to be molested in his person or estate, on account of his religious persuasion, or profession, or for his religious practice, unless, under the color of religion, he shall disturb the good order, peace or safety of the State, or shall infringe the laws of morality, or injure others in their natural, civil or religious rights; nor ought any person to be compelled to frequent, or maintain, or contribute, unless on contract, to maintain, any place of worship, or any ministry; nor shall any person, otherwise competent, be deemed incompetent as a witness, or juror, on account of his religious belief, provided, he believes in the existence of God, and that under His dispensation such person will be held morally accountable for his acts, and be rewarded or punished therefor either in this world or in the world to come.

Nothing shall prohibit or require the making reference to belief in, reliance upon, or invoking the aid of God or a Supreme Being in any governmental or public document, proceeding, activity, ceremony, school, institution, or place.

Nothing in this article shall constitute an establishment of religion.

213.    Many of Plaintiff's clients have sincerely held religious beliefs that same-sex sexual attractions, behaviors, or identity are wrong, and they seek to resolve these conflicts between their religious beliefs and their attractions in favor of their religious beliefs.

214.    Plaintiff also has sincerely held religious beliefs motivating him to provide spiritual counsel and assistance to his clients who seek such counsel. Plaintiff sincerely holds religious beliefs that he should counsel clients on the subject matter of same-sex attractions, behaviors, or identity from a religious viewpoint that aligns with his religious beliefs and those of his clients when requested by his clients.

215.    SB 1028, on its face and as applied, targets Plaintiff's and his clients' sincerely held religious beliefs regarding human nature, gender, ethics, morality, and counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity, which are informed by the Torah, Bible, Book of Mormon, and Koran and constitute central components of their faith.

SB 1028 will cause them a direct and immediate conflict with their religious beliefs by prohibiting them from offering, referring, and receiving counseling that is consistent with their religious beliefs.

216.    SB 1028, on its face and as applied, has impermissibly burdened Plaintiff's and his clients' sincerely held religious beliefs and compel them either to change those religious beliefs or to act in contradiction to them. SB 1028 has also forced Plaintiff and his clients to choose between the teachings and requirements of their sincerely held religious beliefs and the value system imposed by the State.

217.    SB 1028 places Plaintiff and his clients in an irresolvable conflict between compliance with their sincerely held religious beliefs and compliance with SB 1028.

218.    SB 1028 puts substantial pressure on Plaintiff to violate his sincerely held religious beliefs by ignoring the fundamental tenets of his faith concerning same-sex attractions, behaviors, or identity

219.    SB 1028, on its face and as applied, is neither neutral nor generally applicable, but rather specifically and discriminatorily targets the religious speech, beliefs, and viewpoint of those individuals who believe change is possible. SB 1028, expressly on its face and as applied, constitutes a substantial burden on sincerely held religious beliefs that is contrary to the State-approved viewpoint on same-sex attractions, behavior, and identity.

220.    The State's purported interests in protecting minors from the so-called harm of counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity are unsubstantiated and do not constitute compelling governmental interests.

221.    No compelling, legitimate, significant, or even rational governmental interest justifies the burdens Maryland imposes on Plaintiff's and his clients' rights to the free exercise of religion.

222.    Even if SB 1028 were supported by any compelling governmental interest, the Counseling Ban is not the least restrictive means to accomplish any permissible governmental purpose which SB 1028 ostensibly seeks to serve.

223.    SB 1028, both on its face and as-applied, evidences Maryland's failure and refusal to accommodate Plaintiff's sincerely held religious beliefs.

224.    SB 1028, both on its face and as-applied, specifically targets religion for disparate treatment and has set up a system of individualized exemptions that permits certain counseling on same-sex attractions, behaviors, or identity while denying religious counseling on the same subject.

225.    SB 1028, both on its face and as-applied, constitutes a religious gerrymander.

226.    SB 1028's violations of Plaintiff's and his clients' rights to free exercise of religion have caused, are causing, and will continue to cause Plaintiff and his clients to suffer undue and actual hardship and irreparable injury.

227.    Plaintiff has no adequate remedy at law to correct the continuing deprivation of his most cherished constitutional liberties.

WHEREFORE, Plaintiff respectfully prays for the relief against Defendants as hereinafter set forth in his prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A.    That this Court issue a preliminary injunction enjoining Defendants and Defendants' officers, agents, servants, employees, and attorneys, and all other persons who are in

active concert or participation with them, during the pendency of this action or until further order from the Court, from enforcing SB 1028 so that:

     i.    Defendants will not use SB 1028 in any manner to infringe Plaintiff's constitutional and statutory rights in the counseling of his clients or from offering a viewpoint on an otherwise permissible subject matter;

     ii.    Defendants will not use SB 1028 in any manner to prohibit Plaintiff from engaging in counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity, or unwanted gender identity distress or confusion, with those minor clients who seek such counseling;

     iii.    Defendants will not use SB 1028 to prohibit Plaintiff's clients from seeking or receiving counseling for unwanted same-sex sexual attractions, behaviors, or identity, or unwanted gender identity distress or confusion; and

     iv.    Defendants will not use SB 1028 in any manner to punish Plaintiff or his clients for engaging, referring to, seeking, or receiving voluntary counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity, or unwanted gender identity distress or confusion.

B.    That this Court issue a permanent injunction enjoining Defendants and Defendants' officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with them, from enforcing SB 1028 so that:

     i.    Defendants will not use SB 1028 in any manner to infringe Plaintiff's constitutional and statutory rights in the counseling of his clients or from offering a viewpoint on an otherwise permissible subject matter;

   ii.    Defendants will not use SB 1028 in any manner to prohibit Plaintiff from engaging in counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity, or unwanted gender identity distress or confusion, with those minor clients who seek such counseling;

   iii.    Defendants will not use SB 1028 to prohibit Plaintiff's clients from seeking or receiving counseling for unwanted same-sex sexual attractions, behaviors, or identity, or unwanted gender identity distress or confusion; and

   iv.    Defendants will not use SB 1028 in any manner to punish Plaintiff or his clients for engaging, referring to, seeking, or receiving voluntary counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity, or unwanted gender identity distress or confusion.

   C.    That this Court render a declaratory judgment declaring unconstitutional SB 1028 and Defendants' actions in applying SB 1028 under the United States Constitution and Constitution of Maryland, and declaring that:

   i.    Maryland violated Plaintiff's and his clients' rights to freedom of speech by prohibiting them from providing, referring to, seeking, or receiving information concerning counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity, or unwanted gender identity or confusion; and

   ii.    Defendants violated Plaintiff's and his clients' rights to free exercise of religion by prohibiting them from providing, referring to, seeking, or receiving information concerning counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity, or unwanted gender identity or confusion, in accordance with their sincerely held religious beliefs;

D.     That this Court award Plaintiff nominal damages for the violation of Plaintiff's constitutional rights;

E.     That this Court award Plaintiff actual damages in an amount to be determined at trial;

F.     That this Court adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy so that such declaration shall have the force and effect of final judgment;

G.     That this Court retain jurisdiction of this matter for the purpose of enforcing this Court's order;

H.     That this Court award Plaintiff the reasonable costs and expenses of this action, including attorney's fees, in accordance with 42 U.S.C. § 1988; and

I.     That this Court grant such other and further relief as this Court deems equitable and just under the circumstances.

Respectfully submitted,

/s/ John R. Garza

John R. Garza (D. Md. 01921)
GARZA LAW FIRM, P.A.
Garza Building
17 W. Jefferson Street, Suite 100
Rockville, Maryland 20850
301-340-8200 ext. 100
301-761-4309 FAX
jgarza@garzanet.com

/s/ Roger K. Gannam

(signed by John R. Garza with permission of
Roger K. Gannam)
Mathew D. Staver (Fla. 701092)[†]
Horatio G. Mihet (Fla. 26581)[†]
Roger K. Gannam (Fla. 240450)[†]
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854-0774
407-875-1776
407-875-0770 FAX
court@LC.org
hmihet@LC.org
rgannam@LC.org

*Attorneys for Plaintiffs*
[†]Application to appear *pro hac vice* forthcoming

## VERIFICATION

I, Christopher Doyle, am over the age of 18 and the Plaintiff in this action, and I declare

under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing statements and

allegations about me or which I make in this VERIFIED COMPLAINT are true and correct, based

upon my personal knowledge (unless otherwise indicated), and if called upon to testify as to their

truthfulness, I would and could do so competently.

Executed this January 18, 2019.

/s/ Christopher Doyle*

Christopher Doyle

*Counsel hereby certifies that he has a signed copy
of the foregoing document available for inspection at
any time by the Court or a party to this action.