IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER DOYLE, LPC, LCPC,　　:
Individually and on behalf of
his clients　　　　　　　　　　　:

　　　v.　　　　　　　　　　　　 :　Civil Action No. DKC 19-0190

　　　　　　　　　　　　　　　　　:

LAWRENCE JOSEPH HOGAN, JR.,
et al.　　　　　　　　　　　　　 :

**MEMORANDUM OPINION**

Plaintiff Christopher Doyle ("Plaintiff") initiated the instant action against Defendants Lawrence J. Hogan, Jr. in his official capacity as Governor of the State of Maryland and Brian E. Frosh in his official capacity as the Attorney General of the State of Maryland (collectively, "Defendants") on January 18, 2019.

The complaint alleges that § 1-212.1 of the Health Occupations Article of the Maryland Code violates Plaintiff's: (1) right to freedom of speech under the First Amendment (ECF No. 1 ¶¶ 144-163); (2) clients' First Amendment rights to receive information (*id.* ¶¶ 164-172); (3) right to free exercise of religion under the First Amendment (*id.* ¶¶ 173-189); (4) "right to liberty of speech under Articles 10 and 40 of the Declaration of Rights of the Constitution of Maryland" (*id.* ¶¶ 190-210); and (5) "right to free exercise and enjoyment of religion under Article 36 of the Declaration of Rights of the Constitution of

Maryland" (*id.* ¶¶ 211-227). Plaintiff seeks (1) "a preliminary injunction enjoining Defendants and Defendants' officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with them . . . from enforcing [§ 1-212.1][;]" (2) "a permanent injunction enjoining enforce[ement] of [§ 1-212.1;]" (3) "a declaratory judgment declaring unconstitutional [§ 1-212.1] and Defendants' actions in applying [§ 1-212.1] under the United States Constitution and Constitution of Maryland[;]" (4) "nominal damages for the violation of [his] constitutional rights[;]" (5) "actual damages in an amount to be awarded at trial[;]" (6) a declaration that "the rights and other legal relations with subject matter here are in controversy so that such declaration shall have the force and effect of final judgment[;]" (7) the court's continued jurisdiction after finding in Plaintiff's favor "for the purpose of enforcing th[e] [c]ourt's order[;]" and (8) "reasonable costs and expenses of this action, including attorney's fees, in accordance with 42 U.S.C. § 1988[.]" (ECF No. 1, at 42-45). Presently pending are: (1) Plaintiff's January 18, 2019 motion for preliminary injunction (ECF No. 2); (2) Defendants' March 8, 2019 motion to dismiss for failure to state a claim (ECF No. 26); (3) a motion for leave to file an amicus curiae brief in support of Defendants' motion to dismiss and opposition to Plaintiff's motion for preliminary injunction (ECF

2

No. 28) filed by FreeState Justice, Inc. ("FreeState") on March 15, 2019; (4) a motion for leave to file an amicus curiae brief in support of Defendants' opposition to Plaintiff's motion for preliminary injunction (ECF No. 31) filed by The Trevor Project on March 15, 2019; (4) Plaintiff's April 11, 2019 motion to compel (ECF No. 44); and (5) Plaintiff's May 16, 2019 motion for leave to file surreply in opposition to Defendant's motion to dismiss (ECF No. 58).

A hearing is scheduled for August 5-6 and will focus on some aspects of the motion to dismiss, and the motion for a preliminary injunction. Some of the other pending motions, preliminary issues, and some of the arguments raised in the motion to dismiss will be resolved in this memorandum opinion, without a hearing. For the following reasons, FreeState's motion for leave to file amicus curiae will be granted, The Trevor Project's motion for leave to file amicus curiae will be granted, Plaintiff's motion for leave to file surreply will be granted, and Plaintiff's motion to compel will be denied without prejudice.

## I.  Background

Defendant Hogan signed Senate Bill ("Senate Bill or SB") 1028 on May 15, 2018. The law was codified as § 1-212.1 of the Health Occupations Article of the Maryland Code and took effect on October 1, 2018. (ECF No. 1-1, at 1, 6). § 1-212.1(b)

prohibits mental health or child care practitioners from engaging in conversion therapy, defined by § 1-212.1(a)(2)(i) as "a practice or treatment . . . that seeks to change an individual's sexual orientation or gender identity[,]" with minor clients. § 1-212.1(a)(1)(2)(ii) states that "'conversion therapy' includes any effort to change the behavioral expression of an individual's sexual orientation, change gender expression, or eliminate or reduce sexual or romantic attractions or feelings toward individuals of the same gender."

Under § 1-212.1, mental health and child care practitioners may practice therapy with minors that "provides acceptance, support, and understanding, or the facilitation of coping, social support, and identity exploration and development, including sexual orientation-neutral interventions to prevent or address unlawful conduct or unsafe sexual practices." However, such therapy may not "seek to change sexual orientation or gender identity." MD. CODE, Conversion Therapy, § 1-212.1(a)(1)(2)(iii). § 1-212.1(c) states that practitioners in violation of the statute "shall be considered to have engaged in unprofessional conduct and shall be subject to discipline by a certain licensing or certifying board."

§ 1-212.1(a)(3) defines "mental health or child care practitioner[s]" as physicians, professional counselors or therapists, psychologists, social workers or residential child

care program professionals licensed or certified in the State of Maryland, and "[a]ny other practitioner licensed or certified under [the Health Occupations Article of the Code of Maryland] who is authorized to provide counseling by the practitioners licensing or certifying board." According to Defendants, § 1-212.1 permits practitioners to (1) communicate with the public about conversion therapy; (2) express their views about conversion therapy to any person, including minor and adult clients; (3) recommend conversion therapy to any person, including minor and adult clients; (4) administer conversion therapy to clients over the age of 18; and (5) refer minor clients to unlicensed counselors and religious leaders for the purposes of undergoing conversion therapy. (ECF No. 26-1, at 3).

To conclude that sexual orientation change efforts ("SOCE") threaten the physical and psychological well-being of minors, the Maryland legislature relied on research, conclusions and statements by the American Psychological Association, American Psychiatric Association, American Medical Association Council on Scientific Affairs, National Association of Social Workers, American Counseling Association Governing Council, American School Counselor Association, American Psychoanalytic Association, American Academy of Child and Adolescent Psychiatry, American Association of Sexuality Educators,

Counselors, and Therapists, Pan American Health Organization, American College of Physicians, and the Pediatrics journal. (ECF No. 1-1, at 4). Much of the information that the legislature relied on discusses the efficacy, or lack thereof, of conversion therapy and explains that the practice may lead to depression or even suicide. For example, the American Psychological Association's 2009 report on sexual orientation change efforts defines SOCE as "methods that aim to change a same-sex sexual orientation (*e.g.*, behavioral techniques, psychoanalytic techniques, medical approaches, religious and spiritual approaches) to hetereosexual[,]" (ECF No. 1-2, at 20 n.5) and concludes that:

> sexual orientation change efforts can pose critical health risks to lesbian, gay, and bisexual people, including confusion, depression, guilt, helplessness, hopelessness, shame, social withdrawal, suicidal ideations, substance abuse, stress, disappointment, self-blame, decreased self-esteem and authenticity to others, increased self-hatred, hostility and blame toward parents, feelings of anger and betrayal, loss of friends and potential romantic partners, problems in sexual and emotional intimacy, sexual dysfunction, high-risk sexual behaviors, a feeling of being dehumanized and untrue to self, a loss of faith, and a sense of having wasted time and resources.

(ECF No. 1-1, at 1). Concerned about the negative effects conversion therapy may have on children during and after receiving the treatment, the "Maryland General Assembly passed,

and the Governor signed, SB 1028 to protect Maryland children from harm[.]" (ECF No. 53, at 1).

Plaintiff is a "psychotherapist who is licensed to practice mental health counseling in Maryland." (ECF No. 1, at 5). Plaintiff currently acts as a mental health therapist for Patrick Henry College in Purcelville, VA, executive director for the Institute for Healthy Families in the Washington, D.C. area (the "Institute"), and clinical director and licensed counselor for Northern Virginia Christian Counseling. (ECF Nos. 53-2, at 2, p. 9 & 1, at 20). Plaintiff asserts that he "has devoted most of his professional life to providing counseling to young people and their parents who are seeking help for unwanted same-sex attractions[.]" (ECF No. 1, at 21).

## II. Motions for Leave to File Briefs as Amici Curiae

FreeState is a legal advocacy organization that seeks to improve the lives of low-income lesbian, gay, bisexual, transgender, and queer ("LGBTQ") people in Maryland. (ECF No. 28, at 1). FreeState contends that it "has demonstrated a special interest in the outcome of the suit" and "represents large constituencies of individuals which have a vested interest" because it "played an integral role in advocating for the passage and subsequent enactment" of § 1-212.1. (*Id.*, at 2) (internal quotations omitted). Similarly, The Trevor Project states that it is the nation's largest LGBTQ youth crisis

intervention and suicide prevention organization. Some of the individuals The Trevor Project serves were treated with conversion therapy or belong to families interested in compelling them to undergo conversion therapy. (ECF No. 31, at 2). The Trevor Project contends that it "has a special interest in this litigation and can offer . . . an additional, unique perspective on the relevant facts and law[] based on what it has learned firsthand from the LGBTQ youth it serves." (ECF No. 31, at 1). Both parties also point out that several other district courts analyzing the constitutionality of similar laws that ban conversion therapy have "liberally granted leave to file amicus *curiae* briefs[.]" (ECF Nos. 28, at 2 & 31, at 5).

Plaintiff opposes the proposed amici curiae, arguing that their proposed briefs are neither useful nor timely. (ECF No. 37, at 2). As for usefulness, Plaintiff disputes the relevance of a study article appended to FreeState's proposed brief and argues that, based on a 2014 public statement by a FreeState's predecessor organization Equality Maryland, the organization actually believes § 1-212.1 is unnecessary. (*Id.*, at 3-5). Plaintiff adds that The Trevor Project's discussion about the negative effects conversion therapy may have on parent-child relationships is discredited by Defendants' response to Plaintiff's request for admissions. As for timeliness, Plaintiff states that the amici curiae "proffer information

months after the counseling ban" and believes acceptance of the amicus briefs "will disrupt the current preliminary injunction proceedings." Finally, Plaintiff argues that the factual material included in The Trevor Project's proposed brief creates an "*ex post facto* evidentiary record to bolster Maryland's counseling ban enactment." (*Id.*, at 8).

There is no Federal Rule of Civil Procedure that applies to motions for leave to appear as amicus curiae in a federal district court. District courts therefore have discretion whether to grant or deny such leave and often look for guidance to Rule 29 of the Federal Rules of Appellate Procedure, which applies to amicus briefs at the federal appeals level. *See, e.g.*, *Jin v. Ministry of State Sec.*, 557 F.Supp.2d 131, 136 (D.D.C. 2008); *Tafas v. Dudas*, 511 F.Supp.2d 652, 660 (E.D.Va. 2007); *Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F.Supp. 720, 728 (D.Md. 1996); *Washington Gas Light Co. v. Prince George's County Council*, Civ. Action No. 08-cv-0967-DKC, 2012 WL 832756, at *3 (D.Md. Mar. 9, 2012). Rule 29 indicates that amici should state "the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case." Fed.R.App.P. 29(b)(2). As noted by Judge Davis in Bryant, "[t]he aid of amici curiae has been allowed at the trial level where they provide helpful analysis of the law, they have a special interest in the subject matter of the suit, or existing

counsel is in need of assistance." *Bryant*, 923 F.Supp. at 728

(citing *Waste Mgmt. of Pa., Inc. v. City of York*, 162 F.R.D. 34,

36 (M.D.Pa. 1995)). "A motion for leave to file an amicus curiae

brief, however, should not be granted unless the court 'deems

the proffered information timely and useful.'" *Id.* (quoting *Yip

v. Pagano*, 606 F.Supp. 1566, 1568 (D.N.J. 1985), *aff'd*, 782 F.2d

1033 (3ᵈ Cir. 1986), *and aff'd sub nom. Appeal of Yip*, 782 F.2d

1033 (3ᵈ Cir. 1986)).

FreeState and The Trevor Project have each demonstrated a

special interest in the outcome of the suit. The Trevor

Project's memorandum provides a separate, experiential

perspective of conversion therapy and the issues surrounding it

and FreeState's memorandum provides a helpful analysis of § 1-

212.1 as a reasonable regulation of a particular mental health

treatment. Additionally, Plaintiff's arguments in opposition to

the proposed amici curiae are without merit. Plaintiff's

argument that FreeState actually agrees with Plaintiff's

position on § 1-212.1 is speculative and, therefore,

unpersuasive. To the extent that The Trevor Project's brief is

undermined by Defendants' admissions, a single discrepancy fails

to frustrate The Trevor Project's proposed amicus brief in its

entirety. Furthermore, both proposed amici filed their briefs

shortly after Defendants filed their motion to dismiss and

opposition to Plaintiff's motion for preliminary injunction,

providing ample time for their review and consideration. Thus, Plaintiff's timeliness objections are similarly unconvincing. The proposed amicus briefs also comply with the requirements of United States District Court for the District of Maryland Standing Order 2018-07. Accordingly, the motions for leave to file brief as amicus curiae will be granted and the amicus briefs will be considered.

**III. Motion to Compel**

Plaintiff argues that, "when [he] attempted to take Defendants' Rule 30(b)(6) deposition on March 28, 2019, Defendants either refused to answer dozens of questions on the basis of 'legislative privilege,' or their designated witness was unprepared and could not answer any of numerous specific questions as to how Defendants interpret, apply or enforce [§ 1-212.1]." (ECF No. 38, at 1). Thus, under Fed.R.Civ.P. 37(a)(1), Plaintiff requests "an order compelling Defendants to provide a Rule 30(b)(6) deposition witness properly prepared and able to answer [his] questions concerning Defendants' positions, interpretations, understanding, application, and enforcement of [§ 1-212.1]." (ECF No. 44, at 1). Plaintiff also requests "an order compelling Defendants to produce a properly prepared Rule 30(b)(6) designee to answer Plaintiffs' deposition questions concerning Defendants' consideration of less speech-restrictive alternatives to [§ 1-212.1]." (*Id.*).

In response, Defendants explain that, after receiving Plaintiff's notice of deposition, they arranged a designee to attend the deposition and fully answer Plaintiff's questions. (ECF No. 52, at 1-2). Defendants argue that the designee spent ample time preparing for the deposition and answered Plaintiff's questions "on allegations of harm related to conversion therapy, possible amendments to the bill that were considered and adopted by the legislature, testimony presented at the committee hearings on the bill, and the public conclusions made by the legislature." (*Id.*, at 4-10). Finally, Defendants assert that the designee was entitled to assert legislative privilege when Plaintiff's "deposition questions inquired into legislative intent[.]" (*Id.*, at 12).

Rule 30(b)(6) provides that persons designated to represent an organization "must testify as to matters known or reasonably available to the organization." The rule "requires a good faith effort . . . to find out the relevant facts—to collect information, review documents and interview employees with personal knowledge[.]" *Wilson v. Lakner*, 228 F.R.D. 524, 528 (D.Md. 2005). "As a corollary, depending on the nature and extent of the obfuscation, the testimony given by [a] nonresponsive deponent (*e.g.*, 'I don't know') may be deemed binding on the corporation so as to prohibit it from offering

contrary evidence at trial." *Dorsey v. TGT Consulting, LLC*, 888
F.Supp.2d 670, 685 (D.Md. 2012).

Here, the arguments advanced in support of Plaintiff's
request are unpersuasive. Defendants provided a designee, the
Director of Health Occupations Boards and Commissions, with
knowledge about § 1-212.1. In preparation for the deposition,
the designee spent about 7 hours reviewing documents and speaking
with lawyers in the Maryland Attorney General's office. (ECF
No. 45-1, at 23-24). Finally, Plaintiff's frustration with the
designee's invocation of legislative privilege here does not
demonstrate noncompliance with Rule 30(b)(6). The designee's
testimony indicates that she made "good faith efforts to prepare"
and "rendered substantial testimony concerning the subject area
of [her] designation[.]" *Wilson*, 228 F.R.D. at 530 (internal
quotations removed). Thus, Plaintiff's arguments do not
indicate that additional designees are necessary at this time.
Accordingly, Plaintiff's motion to compel will be denied.

## IV. Motion for Leave to File Surreply

Plaintiff argues that his proposed surreply to Defendants'
motion to dismiss must be accepted because he must be provided
with and have an opportunity to address the discovery evidence
Defendants rely on in their reply. (ECF No. 58, at 1). According
to Plaintiff, Defendants' reply "argue[s], for the first time,
that discovery evidence supports dismissal of Plaintiff's claims

for lack of standing" and relies on "passages of Plaintiff's deposition testimony that w[ere] not available when Defendants' Motion to Dismiss was filed." (*Id.*)  Thus, Plaintiff's surreply requests permission "to argue from discovery evidence, including all of [his] deposition testimony[.]" (*Id.* (emphasis omitted)).

Under Local Rule 105.2(a), "[u]nless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."  A surreply may be permitted "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D.Md. 2003) (citation omitted).  By contrast, "[a] motion for leave to file a surreply may be denied when the matter addressed in the reply is not new." *Marshall v. Capital View Mut. Homes*, No. 12-cv-3109-RWT, 2013 WL 3353752, at *3 (D.Md. July 2, 2013) (citation omitted).

By way of background, Defendants' motion to dismiss argues that Plaintiff lacks standing.  Specifically, Defendants state that Plaintiff does not allege an injury-in-fact, or "'[] intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute' and that 'there exists a credible threat of prosecution thereunder.'" (ECF No. 26-1, at 7) (quoting *Davison v. Randall*, 912 F.3d 666, 678 (4th Cir. 2019)).  Plaintiff's opposition to Defendants' motion to dismiss argues that Plaintiff has standing

because, due to § 1-212.1, he may have to halt counseling with five Maryland minor clients he is treating for "unwanted same-sex attractions and/or gender identity conflicts." (ECF No. 47, at 3) (internal quotation omitted). Defendants' reply repeats and elaborates on their original standing argument, adding that Plaintiff's deposition and other discovery documents further demonstrate Plaintiff's lack of standing. (ECF No. 53, at 1-5). Attached to Defendants' reply are excerpts of Plaintiff's deposition, Plaintiff's answers to interrogatories, and copies of informed consent forms used by Plaintiff at the Institute for Healthy Living. (ECF Nos. 53-2; 53-3; 53-4; 53-5; 53-6).

Although the standing argument in Defendants' reply is not novel, Defendants do augment their argument with new evidence by relying on Plaintiff's discovery responses. As a result, Plaintiff's deposition and the standing arguments in Plaintiff's proposed surreply that advance new conclusions based on the deposition will be considered in determining whether Plaintiff has standing and the motion for leave to file surreply will be granted.

## V.   Motion to Dismiss

### A.   Defendants' Incorporation by Reference

Defendants filed an opposition in response to Plaintiff's motion for preliminary injunction on March 8, 2019. (ECF No. 25). In their motion to dismiss, Defendants rely on and

incorporate by reference some of the arguments they advanced in their opposition to Plaintiff's motion for preliminary injunction, which assert that Plaintiff "has not state[d] a claim for violation of his free speech rights as a matter of law." (ECF No. 26-1, at 2 n.1). As a preliminary matter, Plaintiff disputes Defendants' incorporation by reference. (ECF No. 47, at 10-11). Plaintiff's response to Defendants' motion to dismiss and motion for leave to file surreply conclude that Defendants' incorporation indicates waiver of their defense because Defendants "only perfunctorily and cursorily referenced their defense of failure to state a claim as to [Plaintiff]'s [f]ree [s]peech claim[.]" (*Id.; see also* ECF No. 58, at 11). Defendants' reply argues instead that Federal Rule of Civil Procedure 10(c) allows them to incorporate by reference their arguments that Plaintiff cannot establish a violation of his free speech rights. (ECF No. 53, at 9).

Rule 10(c) provides that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." Although Rule 10 instructs the form of pleadings, "[a] few federal courts have allowed defendants to incorporate by reference to prior motions made in the action." 5A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1326 (4th ed. 2019). This court and other federal district courts have allowed incorporation by reference under similar

circumstances. *See, e.g.*, *NVR, Inc. v. Harry A. Poole, Sr. Contractor, Inc.,* No. 14-cv-241-ELH, 2015 WL 1137739, at *2 n.5 (D.Md. Mar. 13, 2015) (considering arguments incorporated from defendant's previous motion to dismiss into defendant's newly filed reply to plaintiff's response to defendant's motion to dismiss or, in the alternative, motion for more definite statement); *Levy v. Wexford Health Sources, Inc.,* No. 14-cv-3678-TDC, 2016 WL 865364, at *6 (D.Md. Mar. 7, 2016) (permitting parties to "incorporate by reference arguments made in their original briefs" if plaintiff was required to re-file her motion for partial summary judgment); *Lowden v. William M. Mercer, Inc.*, 903 F.Supp. 212, 216 (D.Mass. 1995) (stating that "it is appropriate to incorporate by reference an argument made in a motion to dismiss an original complaint despite the subsequent amendment of the complaint."). Because Plaintiff's arguments in favor of prohibiting incorporation are without merit, the free speech arguments advanced in Defendants' opposition to Plaintiff's motion for preliminary injunction will be evaluated as part and parcel of Defendants' motion to dismiss.

### B.  Standing

The issue of standing may be challenged on a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). "The plaintiff has the burden of proving that subject matter jurisdiction exists." *Evans v. B.F. Perkins*

17

*Co.*, 166 F.3d 642, 647 (4th Cir. 1999). When deciding Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647. The court should grant a Rule 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768 (citing *Trentacosta v. Frontier P. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987)).

Any plaintiff seeking to invoke the jurisdiction of a federal court must establish standing. *See, e.g.*, *Allen v. Wright*, 468 U.S. 737, 750–51 (1984); *S. Walk at Broadlands Homeowner's Ass'n Inc. v. Openband at Broadlands, LLC,* 713 F.3d 175, 185 (4th Cir. 2013). The doctrine of standing consists of two distinct "strands": constitutional standing pursuant to Article III and prudential standing. *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). The requirements for constitutional standing reflect that Article III "confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen*, 468 U.S. at 750; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1993) ("[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III[.]"). "[A plaintiff] must, in other

words, show that the facts alleged present the court with a 'case or controversy' in the constitutional sense and that [he] is a proper plaintiff to raise the issues sought to be litigated." *Linda R.S. v. Richard D.*, 410 U.S. 614, 616 (1973). To establish Article III standing, a plaintiff must demonstrate that:

> (1) [she] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). A plaintiff can show injury-in-fact in two ways:

> First, there is a sufficiently imminent injury in fact if plaintiff[] allege[s] "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Babbitt v. Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). "[I]t is not necessary that [a plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Separately, there is an ongoing injury in fact if plaintiff[] make[s] a "sufficient showing of self-censorship, which occurs when a claimant is chilled from exercising his right to free expression." *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th

19

Cir. 2013) (internal quotation marks
omitted).

*Kenny v. Wilson*, 885 F.3d 280, 288 (4th Cir. 2018).

Defendants argue that Plaintiff cannot demonstrate injury-in-fact because he has minimal connections to the state of Maryland and "fails to allege that he performs or intends to perform conversion therapy on minor clients in Maryland." (ECF No. 26-1, at 8). Although Defendants accurately point out that Plaintiff's complaint and motion for preliminary injunction do "not specifically allege that he has *any* [client]s in Maryland" (*id.*), Plaintiff's answers to Defendants' interrogatories clarify that Plaintiff provides therapy to at least two minors who reside in Maryland and formerly provided counseling to at least three other minor clients who reside in Maryland (ECF No. 53-3, at 3).[1] Additionally, Plaintiff testified that he has used his Maryland therapeutic license (ECF No. 58-1, at 137) to treat minor clients in Maryland over the past three years (*id.*, at

_____

[1] Plaintiff's interrogatory responses indicate that he uses audio visual equipment to conduct much of the individual counseling with these clients. However, Plaintiff is still subject to Maryland law even if Plaintiff himself is not physically located in Maryland when treating his Maryland clients. *See* Craig P. Tanio et al., Maryland Telemedicine Task Force: Final Report, Appendix R: Physician Licensing in Maryland http://mhcc.maryland.gov/mhcc/pages/home/workgroups/documents/ tlmd/tlmd_ttf_rpt_102014.pdf ("Physicians and other practitioners delivering telemedicine services must abide by state licensure and scope of practice laws and requirements in the state where the patient receives services.").

133) and wishes to continue this practice (*id.*). Thus, Plaintiff has demonstrated that he is a "mental health or child care practitioner" actively treating clients in Maryland. §1-212.1.

Defendants next argue that, even if Plaintiff demonstrates that he counsels clients in Maryland, he is not injured by § 1-212.1 because he does not actually perform conversion therapy. (ECF No. 53, at 2). Defendants rely on Plaintiff's testimony about his counseling practice, interrogatory answers and the consent forms he uses when practicing at the Institute for Healthy Families. (ECF Nos. 53-2; 53-3; 53-4; 53-5; 53-6). The forms state that "[Plaintiff] and the Institute for Healthy Families do[] not practice reparative therapy, reorientation therapy, conversion therapy, or any type of sexual orientation change effort (SOCE) therapy." (ECF No. 53-6, at 2). The forms further state that clients seeking treatment for sexual or gender identity conflicts will receive "sexual/gender identity-affirming therapy/coaching." (*Id.*). Plaintiff's deposition testimony states, in relevant part, that he "define[s] conversion therapy as a practice that is expressly trying to change a client from gay to straight" and affirms that he does not "engage in that particular kind of therapy." (ECF No. 53-2, at 5, p. 20). Plaintiff explained:

> Essentially, the work that I do, I describe
> it as sexual and gender identity affirming
> therapy, and what I explain to clients is

> that they're in the driver's seat, that I'm
> not imposing a goal on their work. I have
> a duty and a right to my clients to work
> with what they want to work on, and clients
> that may be open to sexual fluidity or
> change, I'm open to that client's goal.

(*Id.*, at 6, p. 22). Finally, Defendants argue that Plaintiff

has not shown a credible threat of prosecution because "[h]e has

not been the subject of complaints to the Maryland Board of

Professional Counselors and Therapists . . . and his only

communications with the Board occurred in connection with

renewing his license." (ECF No. 53, at 5).

Plaintiff responds that relevant portions of his complaint

demonstrate how he is injured by § 1-212.1, including:

> As a psychotherapist licensed in Maryland
> who engages in counseling to eliminate,
> reduce, or resolve unwanted same-sex
> attractions, behaviors, or identity,
> Plaintiff is subject to potential
> professional discipline under [§ 1-212.1].
>
> [§ 1-212.1] prohibits Plaintiff from
> engaging in counseling to eliminate, reduce,
> or resolve unwanted same-sex attractions,
> behaviors, or identity with his minor
> clients, and requires Plaintiff to
> discontinue ongoing counseling despite the
> clients' and their parents' consent and
> requests to continue, or face penalties
> under the statute.

(ECF No. 47, at 3) (quoting ECF No. 1, at 26). According to

Plaintiff, "'[a]ccepting as true all of the factual allegations

contained in the complaint and drawing all reasonable inferences

in favor of the plaintiff,' . . . it is clear that [he] is

challenging [§ 1-212.1] because it bans his Maryland counseling with Maryland clients." (ECF No. 47, at 4) (quoting *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), *cert. denied*, 138 S.Ct. 635 (2018) (internal marks omitted)). Plaintiff's surreply adds that, although Plaintiff testified that he does not engage in conversion therapy, he also testified that he currently treats minors with "gender identity confusion" who "sometimes identify a goal that they have for themselves to change or reduce or eliminate the unwanted attraction or confusion." (ECF No. 58-1, at 134-35). Where clients manifest this intent, Plaintiff "wish[es] to provide them with the counseling that they seek in order to accomplish their self-chosen goals." (*Id.*, at 135-36). In conclusion, Plaintiff stated that § 1-212.1 "determines that the work that [he] do[es] is called conversion therapy[.]" (*Id.*, at 136). Finally, Plaintiff adds that his practice of conversion therapy qualifies as prohibited behavior under § 1-212.1 even when the "change goal" originates with his minor client. (ECF No. 58, at 6).

Although portions of Plaintiff's testimony undermine whether Plaintiff practices conversion therapy as defined by § 1-212.1, Plaintiff has demonstrated standing. Plaintiff testified, after reading the definition of conversion therapy provided in the senate bill that preceded § 1-212.1, that he does not engage in conversion therapy. (ECF No. 58-1, at 70).

Plaintiff added that he "affirm[s] [the client's] identity as they state[.]" (*Id.*, at 73). However, Plaintiff explained that the treatments used to affirm a client's identity include "practices and techniques . . . that may have an effect on a client's sexual identity, gender identity, attractions, [and] behaviors[.]" (*Id.*, at 71-72). Plaintiff's treatment methods may simultaneously affirm a client's identity while "help[ing] them understand or resolve certain unwanted attractions and behaviors" (*id.*, at 74) because "a [client]'s sexual or gender identity may not be the same as their attractions [and] behaviors" (*id.*, at 72). Plaintiff "has experienced a non-speculative and objectively reasonable chilling effect" due to § 1-212.1 and, thus, has demonstrated standing. *Cooksey v. Futrell*, 721 F.3d 226, 236 (4th Cir. 2013).

### C. Third-Party Standing

Plaintiff's complaint, filed "individually and on behalf of his clients[,]" alleges that § 1-212.1 harms his clients because the law "prevents [them] from receiving counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity and deprives them of the opportunity even to obtain information about such counseling from [licensed mental health professionals]." (ECF No. 1, at 33). Defendants argue that Plaintiff does not have third-party standing because his minor

clients "are not hindered in their ability to represent their
own interests." (ECF No. 26-1, at 9).

Generally, a plaintiff "must assert his own legal rights
and interests, and cannot rest his claim to relief on the legal
rights or interests of third parties." *Warth v. Seldin*, 422
U.S. 490, 499 (1975). However, "there may be circumstances where
it is necessary to grant a third party standing to assert the
rights of another." *Kowalski v. Tesmer*, 543 U.S. 125, 129-30
(2004). The United States Court of Appeals for the Fourth
Circuit summarized the test for third-party standing in *Freilich
v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 215 (4th Cir.
2002):

> Even if a plaintiff satisfies Article III
> standing requirements, "[f]ederal courts
> must hesitate before resolving a
> controversy, even one within their
> constitutional power to resolve, on the
> basis of the rights of third persons not
> parties to the litigation." *Singleton v.
> Wulff*, 428 U.S. 106, 113 (1976). To
> overcome the prudential limitation on third-
> party standing, a plaintiff must
> demonstrate: (1) an injury-in-fact; (2) a
> close relationship between [him]self and the
> person whose right []he seeks to assert; and
> (3) a hindrance to the third party's ability
> to protect his or her own interests. *Powers
> v. Ohio*, 499 U.S. 400, 410-11 (1991).

There is little doubt that, if Plaintiff's minor clients
would like Plaintiff to treat them using conversion therapy,
they are injured by § 1-212.1. Likewise, Plaintiff's close

relationship with his minor clients is evidenced by his ongoing provision of counseling services. However, Plaintiff fails to show how his clients are unable to protect their own interests by independently bringing suit. Plaintiff asserts that his minor clients cannot file suit because they face "embarrassment, stigmatization, and opprobrium[.]" (ECF No. 47, at 6) (quoting ECF No. 1, at 29). However, the court "cannot simply assume that every" potentially embarrassed and stigmatized minor client "is incapable of asserting his or her own claims." *Freilich*, 313 F.3d at 215. "[T]hird parties themselves usually will be the best proponents of their own rights," and Plaintiff has provided no concrete evidence that these alleged factors prevent his minor clients from bringing their claims. *Singleton*, 428 U.S. at 114. Additionally, Plaintiff's minor clients may file pseudonymously to ensure their information remains private while proceeding on their own behalf. *See, e.g.*, *Otto v. City of Boca Raton, Fla.,* 353 F.Supp.3d 1237, 1247 (S.D.Fla. 2019) ("Further, the Court notes . . . that minor clients have been able to file suit pseudonymously in other cases challenging bans on SOCE.") (internal quotations and citation omitted); *Doe v. Christie,* 33 F.Supp.3d 518, 520 (D.N.J. 2014), *aff'd sub nom. Doe ex rel. Doe v. Governor of N.J.*, 783 F.3d 150 (3d Cir. 2015); *Pickup v. Brown*, 42 F.Supp.3d 1347, 1349 (E.D.Cal. 2012), *aff'd*, 728 F.3d 1042 (9th Cir. 2013), and *aff'd*, 740 F.3d 1208 (9th Cir. 2014).

Accordingly, Plaintiff does not possess third party standing to bring claims on behalf of his minor clients. As a result, Plaintiff's claim that § 1-212.1 violates his clients' First Amendment right to receive information, asserted only on behalf of his minor clients, will be dismissed.

### D.   Eleventh Amendment Immunity

Defendants argue that, under the Eleventh Amendment, "the Governor and Attorney General, the only two [D]efendants, are immune from this suit and should be dismissed as defendants." (ECF No. 25, at 14). Defendants recognize that private individuals may sue "[s]tate officials for prospective or declaratory relief for ongoing violations of federal law[,]" (ECF No. 26-1, at 11) (quoting *Weigel v. Maryland,* 950 F.Supp.2d 811, 831 (D.Md. 2013)) (internal quotation marks omitted) but add that Defendants are not included under this Eleventh Amendment exception because they are not specifically responsible for enforcing § 1-212.1. (*Id.*, at 12). Plaintiff responds that Defendants are excepted from Eleventh Amendment immunity because § 1-212.1 "suggests department- or board-level officials are among the class of state officials who may be the proper defendants by virtue of explicit authority in" the law. (ECF No. 47, at 9).

Defendants' argument will be reviewed under Rule 12(b)(1). The Fourth Circuit has not decided whether sovereign immunity is

grounds for dismissal for failure to state a claim under Rule
12(b)(6) or for lack of subject matter jurisdiction under Rule
12(b)(1). Judges in this district favor analysis under Rule
12(b)(1) because immunity functions "as a block on the exercise
of that jurisdiction[.]" *Gross v. Morgan State Univ.*, 308
F.Supp.3d 861, 865 (D.Md. 2018) (quoting *Biggs v. Meadows*, 66
F.3d 56, 60 (4th Cir. 1995)) (internal quotation marks omitted).
"A motion to dismiss based on lack of subject matter jurisdiction
pursuant to [] Rule . . . 12(b)(1) raises the question of whether
the court has the competence or authority to hear the case."
*Davis v. Thompson*, 367 F.Supp.2d 792, 799 (D.Md. 2005). The
plaintiff bears the burden of establishing subject matter
jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982);
*see also Kerns v. United States*, 585 F.3d 187, 192 (4th Cir.
2009) (noting challenge may be either facial, *i.e.*, "a complaint
fails to allege facts upon which subject matter jurisdiction can
be based[,]" or factual, *i.e.*, "the jurisdictional allegations
of the complaint [are] not true") (alteration in original)
(internal citations and quotation marks omitted). Where
defendants raise the defense of sovereign immunity, they make a
facial challenge to the complaint. *See, e.g.*, *Weiss v. Price*,
No. 17-cv-1127-ELH, 2018 WL 1156770, at *2 (D.Md. Mar. 5, 2018);
*Downing v. Balt. City Bd. of School Comm'rs*, No. 12-cv-1047-RDB,
2012 WL 6615017, at *3 (D.Md. Dec. 18, 2012). In a facial

challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192.

As noted by the Fourth Circuit in *Lee-Thomas v. Prince George's County Public Schools*, 666 F.3d 244, 248-49 (4th Cir. 2012):

> Pursuant to the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. The Supreme Court "has drawn on principles of sovereign immunity to construe the Amendment to establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990) (internal quotation marks omitted). The States' immunity also extends to "state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). "The Eleventh Amendment bar to suit is not absolute," however. *Feeney*, 495 U.S. at 304. There are three exceptions to that constitutional bar.
>
> First, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (internal quotation marks and alterations omitted). . . . Second, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials

> acting in violation of federal law." *Frew*
> *ex rel. Frew v. Hawkins*, 540 U.S. 431, 437
> (2004). . . . Third, "[a] State remains free
> to waive its Eleventh Amendment immunity
> from suit in a federal court." *Lapides v.*
> *Bd. of Regents of Univ. Sys. of Ga.*, 535
> U.S. 613, 618 (2002).

To the extent that Plaintiff seeks damages for violation of his constitutional rights, Defendants are entitled to Eleventh Amendment immunity.

However, the second exception is also relevant here based on Plaintiff's request for injunctive relief. The exception, originally detailed in *Ex parte Young*, 209 U.S. 123, 155-56 (1908), applies to "officers of the state[] [who] are clothed with some duty in regard to the enforcement of the laws of the state[.]" Excluded from the exception are "officers who have only a general obligation to enforce all laws of the state and who lack a 'special relation' to the specific law or action being challenged." *Stinnie v. Holcomb*, 734 F.App'x 858, 874 (4th Cir. 2018) (citation omitted). "This requirement 'protects a state's Eleventh Amendment immunity while, at the same time, ensuring that, in the event a plaintiff sues a state official in his individual capacity to enjoin unconstitutional action, any federal injunction will be effective with respect to the underlying claim.'" *Kobe v. Haley*, 666 F.App'x 281, 299 (4th Cir. 2016) (quoting *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010).

§ 1-212.1(c) itself states that practitioners in violation of the statute "shall be subject to discipline by the mental health or child care practitioner's licensing or certifying board." § 1-212.1(e) adds that "The [Maryland] Department [of Health] shall adopt regulations necessary to implement this section." As Defendants highlight, the text of § 1-212.1 awards the statute's disciplinary and regulatory maintenance to specific bodies. However, the statute does not explicitly prohibit oversight by the Maryland governor and attorney general. Additionally, the governor "supervise[s] and direct[s] the officers and units" in the State of Maryland Executive Branch, including the Maryland Department of Health. MD. CODE, State Government, § 3-302. Similarly, the attorney general "is the legal adviser of and shall represent and otherwise perform all of the legal work for each officer and unit of the State government." *Id.* § 6-106; *see also Bostick v. Smoot Sand & Gravel Corp.*, 154 F.Supp. 744, 756 (D.Md. 1957), *judgment rev'd on other grounds*, 260 F.2d 534 (4th Cir. 1958) ("[I]t has not been unusual for the Maryland Attorney General to render legal opinions to agencies of the Federal government, and to include them in his official reports."). "The requirement is not a stringent one, as the officer being sued need only "'have some connection with the enforcement of the act.'" *Stinnie*, 734 F.App'x at 875 (quoting *Young*, 209 U.S. at 157). "[I]t is not

even 'necessary that such duty of enforcement be declared in the same act which is to be enforced.'" *Id.* (quoting *Young*, 209 U.S. at 157). Thus, Defendants have failed to demonstrate that issuing an injunction against them would be ineffective at prohibiting enforcement of § 1-212.1.

**V.    Conclusion**

For the foregoing reasons, FreeState's motion for leave to file amicus curiae will be granted, The Trevor Project's motion for leave to file amicus curiae will be granted, Plaintiff's motion for leave to file surreply will be granted, and Plaintiff's motion to compel will be denied without prejudice. A separate order will follow.

                                    /s/
                        _____
                        DEBORAH K. CHASANOW
                        United States District Judge