IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER DOYLE, LPC, LCPC,      :
Individually and on behalf of
his clients                        :

    v.                             :   Civil Action No. DKC 19-0190

                                 :

LAWRENCE JOSEPH HOGAN, JR.,
et al.                             :

**MEMORANDUM OPINION**

Plaintiff Christopher Doyle ("Plaintiff") initiated the instant action against Defendants Lawrence J. Hogan, Jr. in his official capacity as Governor of the State of Maryland and Brian E. Frosh in his official capacity as the Attorney General of the State of Maryland (collectively, "Defendants") on January 18, 2019.

At issue in this case is § 1-212.1 of the Health Occupations Article of the Maryland Code which states: "A mental health or child care practitioner may not engage in conversion therapy with an individual who is a minor." The complaint alleges that § 1-212.1 violates Plaintiff's: (1) right to freedom of speech under the First Amendment (ECF No. 1 ¶¶ 144-163); (2) clients' First Amendment rights to receive information (*id.* ¶¶ 164-172); (3) right to free exercise of religion under the First Amendment (*id.* ¶¶ 173-189); (4) "right to liberty of speech under Articles 10 and 40 of the Declaration of Rights of the Constitution of Maryland" (*id.*

¶¶ 190-210); and (5) "right to free exercise and enjoyment of religion under Article 36 of the Declaration of Rights of the Constitution of Maryland" (*id.* ¶¶ 211-227). Plaintiff seeks (1) "a preliminary injunction enjoining Defendants and Defendants' officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with them . . . from enforcing [§ 1-212.1][;]" (2) "a permanent injunction enjoining [enforcement of § 1-212.1;]" (3) "a declaratory judgment declaring unconstitutional [§ 1-212.1] and Defendants' actions in applying [§ 1-212.1] under the United States Constitution and Constitution of Maryland[;]" (4) "nominal damages for the violation of [his] constitutional rights;" (5) "actual damages in an amount to be determined at trial;" (6) a declaration that "the rights and other legal relations with the subject matter here [are] in controversy so that such declaration shall have the force and effect of final judgment;" (7) the court's continued jurisdiction after finding in Plaintiff's favor "for the purpose of enforcing th[e] [c]ourt's order;" and (8) "reasonable costs and expenses of this action, including attorney's fees, in accordance with 42 U.S.C. § 1988[.]" (ECF No. 1, at 42-45).

Plaintiff filed a motion for preliminary injunction on January 18, 2019. (ECF No. 2). Defendants filed a motion to dismiss for failure to state a claim on March 8, 2019. (ECF No. 26). A memorandum opinion and order were issued on August 1, 2019,

granting Freestate Justice, Inc. and The Trevor Project leave to file an amicus brief, denying Plaintiff's motion to compel, and granting Plaintiff's motion to file surreply. (ECF Nos. 65 & 66). The opinion also resolved four of the preliminary issues raised in Defendants' motion to dismiss, finding that: (1) the free speech arguments Defendants originally provided in their opposition to Plaintiff's motion for preliminary injunction would be evaluated as part of their motion to dismiss; (2) Plaintiff possesses standing; (3) Plaintiff does not possess standing to bring claims on behalf of his minor clients; and (4) Defendants are not entitled to Eleventh Amendment immunity. The issues have been briefed and the parties argued their positions regarding the motion for preliminary injunction and the motion to dismiss during a motions hearing on August 5, 2019. For the following reasons, Plaintiff's motion for preliminary injunction will be denied as moot and Defendants' motion to dismiss will be granted.

## I. Motion to Dismiss

### A. Standard of Review

Defendants' argument that the complaint fails to state a plausible claim for relief is governed by Fed.R.Civ.P. 12(b)(6). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A complaint need only satisfy the standard of Rule 8(a)(2), which requires a

"short and plain statement of the claim showing that the pleader is entitled to relief[.]"  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted).  At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

**B.   Free Speech**

Defendants argue that Plaintiff fails to state a claim for violation of his free speech rights under the First Amendment.

(ECF No. 26-1, at 13). According to Defendants, § 1-212.1 regulates "the practice of licensed mental health and child care practitioners by prohibiting a particular type of treatment that the legislature determined to be harmful to minors." (ECF No. 25, at 14). Thus, Defendants conclude that the law is subject only to rational basis review because it "regulates conduct — not speech[.]" (*Id.*). Because "[t]here can be no doubt that the State of Maryland has a legitimate interest in protecting minors from harmful conduct[,]" Defendants assert that § 1-212.1 easily withstands rational basis review. (*Id.*, at 16).

Defendants add that, if § 1-212.1's prohibitions are found to have more than an incidental burden on Plaintiff's speech, the statute may alternatively be subject to intermediate scrutiny. (ECF No. 25, at 16). Defendants rely on *Otto v. City of Boca Raton*, 353 F.Supp.3d 1237 (S.D.Fla. 2019) to assert that Plaintiff's free speech claim fails because the law survives intermediate scrutiny:

> [T]he legislature's interest in protecting minors is important[] and the ban . . . furthers that interest. [] [T]he ban does not burden more speech than necessary; it prohibits only the therapy that the legislature found to be harmful. It only affects certain licensed health care providers and the treatment that they provide to minors. It does not limit in any way [Plaintiff]'s or any other individual's right to advocate for conversion therapy or a repeal of the statute. It does not limit [Plaintiff]'s ability to engage in conversion therapy with adults or

> his right to express and discuss his views
> about conversion therapy to his clients.
> Thus, it is likely that [§ 1-212.1] would
> survive an intermediate scrutiny review.

(ECF No. 25, at 17). Defendants add that § 1-212.1 is not a content- or viewpoint-based restriction because "[i]t does not limit what [Plaintiff] or other licensed practitioners may say to minor clients; it limits the object that the therapy provided by licensed practitioners may have." (*Id.*, at 20).

Plaintiff maintains that he "has stated a First Amendment claim under federal pleading standards." (ECF No. 47, at 12). At the outset, Plaintiff asserts that he "sufficiently alleged that [§ 1-212.1] is a viewpoint- and content-based restriction . . . [and] chills expression." (*Id.*, at 11). Plaintiff dismisses Defendants' conclusion that § 1-212.1 regulates conduct by conflating the categories of professional speech and professional conduct:

> The government cannot simply relabel the
> speech of health professionals as "conduct" in
> order to restrain it with less scrutiny. *See*,
> *e.g., Nat'l Inst. for Family & Life Advocates
> v. Becerra [(NIFLA)]*, 138 S.Ct. 2361, 2371-72
> (2018) . . . ("[T]his Court has not recognized
> 'professional speech' as a separate category
> of speech. Speech is not unprotected merely
> because it is uttered by professionals."):
> *Reed v. Town of Gilbert*, 135 S.Ct. 2218, 2229
> (2015) (same); *Holder v. Humanitarian Law
> Project*, 561 U.S. 1, 27[-28] (2010) (holding
> government may not apply alternative label to
> protected speech to evade First Amendment
> review, when only "conduct" at issue is
> speech); *Legal Servs. Corp. v. Velazquez*, 531

> U.S. 533 (2001) (same); *NAACP v. Button*, 371
> U.S. 415, 438 (1963) ("[A] state may not,
> under the guise of prohibiting professional
> misconduct, ignore constitutional rights.").

(*Id.*, at 12).  Plaintiff argues that, because he primarily uses speech to provide counseling to his minor clients, the act of counseling must be construed as speech for purposes of First Amendment review.  (*Id.*, at 13).  As such, § 1-212.1 is subject to and unable to "withstand the requisite [strict] constitutional scrutiny."  (*Id.*, at 11).

Determining the proper level of review first requires distinguishing whether § 1-212.1 regulates speech, conduct, or something in between.  Although the line between speech and conduct is often murky, it is without question that "restrictions on protected expression" are treated distinctly from "restrictions on . . . nonexpressive conduct."  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011).  "[T]he First Amendment does not prevent restrictions directed at . . . conduct from imposing incidental burdens on speech."  *Id.*  Indeed, "it has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed."  *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949).  Thus, government regulations of professional practices that entail and incidentally burden speech receive

deferential review. *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*, 879 F.3d 101, 109 (4th Cir.), *cert. denied*, 138 S.Ct. 2710 (2018) ("The power of government to regulate the professions is not lost whenever the practice of a profession entails speech.") (quoting *Lowe v. S.E.C.*, 472 U.S. 181, 228 (1985)) (internal quotation marks omitted). However, "that does not mean that individuals simply abandon their First Amendment rights when they commence practicing a profession." *Stuart v. Camnitz*, 774 F.3d 238, 247 (4th Cir. 2014). When a professional asserts that the professional's First Amendment rights "are at stake, the stringency of review thus slides 'along a continuum' from 'public dialogue' on one end to 'regulation of professional conduct' on the other." *Id.* at 248 (quoting *Pickup v. Brown*, 740 F.3d 1208, 1227, 1229 (9th Cir. 2014), *abrogated by Becerra*, 138 S.Ct. 2361). As the Fourth Circuit has explained:

> Because the state has a strong interest in supervising the ethics and competence of those professions to which it lends its imprimatur, this sliding-scale review applies to traditional occupations, such as medicine or accounting, which are subject to comprehensive state licensing, accreditation, or disciplinary schemes. *See[,] e.g., Stuart*, 774 F.3d 238 (doctors); *Accountant's Soc'y of Va. v. Bowman*, 860 F.2d 602 (4th Cir. 1988) (accountants). More generally, the doctrine may apply where "the speaker is providing personalized advice in a private setting to a paying client." *Moore-King v. Cty. of Chesterfield, Va.*, 708 F.3d 560, 569 (4th Cir. 2013).

*Greater Balt. Ctr. for Pregnancy Concerns, Inc.*, 879 F.3d at 109.
Thus, Plaintiff's free speech claim turns on "whether verbal
communications become 'conduct' when they are used as a vehicle
for mental health treatment." *King v. Governor of N.J.*, 767 F.3d
216, 224 (3ᵈ Cir. 2014), *abrogated by Becerra*, 138 S.Ct. 2361.

Section 1-212.1 obviously regulates professionals, or
"individuals who provide personalized services to clients and who
are subject to a generally applicable licensing and regulatory
regime." *Becerra*, 138 S.Ct. at 2371 (internal quotation marks
omitted). Although § 1-212.1 regulates speech by prohibiting the
use of language employed in the process of conducting conversion
therapy on minor clients, it "does not prevent licensed therapists
from expressing their views about conversion therapy to the public
and to their [clients]." (ECF No. 25, at 15). Most importantly,
§ 1-212.1 does not prohibit practitioners from engaging in any
form of personal expression; they remain free to discuss, endorse,
criticize, or recommend conversion therapy to their minor clients.
(ECF No. 25, at 17). Instead, § 1-212.1 "is a regulation of
[psychological] treatment insofar as it directs [mental health or
child care practitioners] to do certain things in the context of
treating a [client]. In that sense, the government can lay claim
to its stronger interest in the regulation of professional
conduct." *Stuart,* 774 F.3d at 248; *see also*, *Pickup*, 740 F.3d at
1229 ("Most, if not all, medical and mental health treatments

require speech, but that fact does not give rise to a First Amendment claim when the state bans a particular treatment."); *Otto*, 353 F.Supp.3d at 1256 ("The regulated treatment is both speech and conduct – directed at minors – administered by a licensed medical professional, as part of the practice of medicine[.]") (internal quotation marks omitted); *Capital Associated Indus., Inc*. v. *Stein*, 922 F.3d 198, 208 (4th Cir. 2019) (considering ban on practice of law by corporations and finding that the statutes in question regulated conduct because they did not "target the communicative aspects of practicing law, such as the advice lawyers may give to clients."). Thus, § 1-212.1 lands on the conduct end of the sliding scale.[1]

---

[1] Plaintiff suggests that the therapy prohibited by § 1-212.1 cannot be construed as conduct due to the Court's holding in *Becerra*. (ECF No. 47, at 12-13 ("[*Becerra*] abrogated by name the principal authority Defendants rely on in their . . . opposition to make their 'conduct' argument, *Pickup*[.]") (internal emphasis omitted)). Plaintiff misconstrues the Court's findings in *Becerra*. Although *Becerra* abrogated *King* and *Pickup*, it did so only on the ground that professional speech is not a separate category of speech for purposes of reviewing a content-based speech regulation. 138 S.Ct. at 2372. The Court found that California's law requiring licensed clinics to provide clients notice of publicly-funded family-planning services did not qualify as professional conduct:

> The licensed notice at issue here is not an informed-consent requirement or any other regulation of professional conduct. The notice does not facilitate informed consent to a medical procedure. In fact, it is not tied to a procedure at all. It applies to all interactions between a covered facility and its clients, regardless of whether a medical

Plaintiff's arguments that conversion therapy cannot be characterized as conduct are unpersuasive. During the motions hearing, Plaintiff argued that some therapies, such as aversive therapy, clearly involve conduct and, as such, should be differentiated from talk therapy. However, conduct is not confined merely to physical action. Plaintiff asserted at the motions hearing that he wishes to conduct speech-based conversion therapy when the change goal originates with his minor client. If his client presents with such a goal, Plaintiff would presumably adopt the goal of his client and provide therapeutic services that are inherently not expressive because the speech involved does not seek to communicate Plaintiff's views. Thus, Plaintiff's argument fails to demonstrate how speech therapy is any more expressive, and thus less in the nature of conduct, than aversive therapy.

According to the Fourth Circuit, "intermediate scrutiny strikes the appropriate balance between the states' police powers and individual rights[]" when evaluating "conduct regulations that incidentally impact speech." *Stein*, 922 F.3d at 209.

---

procedure is ever sought, offered, or performed. If a covered facility does provide medical procedures, the notice provides no information about the risks or benefits of those procedures.

*Becerra*, 138 S.Ct. at 2373. However, the Court's holding did not proscribe a finding that conversion therapy qualifies as professional conduct.

Consequently, intermediate scrutiny is the appropriate standard of review.

"To survive intermediate scrutiny, the defendant must show 'a substantial state interest' and a solution that is 'sufficiently drawn' to protect that interest." *Id.* (quoting *Becerra*, 138 S.Ct. at 2375). As the Supreme Court of the United States has recognized, states have at least a substantial interest in protecting the health and safety of minors. *Sable Commc'ns of Cal., Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989) ("We have recognized that there is a compelling interest in protecting the physical and psychological well-being of minors."); *New York v. Ferber*, 458 U.S. 747, 757 (1982) ("A democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens.") (quoting *Prince v. Massachusetts*, 321 U.S. 158, 168 (1944)) (internal quotation marks omitted).

Next, Defendants must demonstrate that "the statute directly advances [the] substantial government interest[.]" *Sorrell*, 564 U.S. at 572. Intermediate scrutiny specifically "requires the government to produce evidence that a challenged regulation materially advances" the state's interest in protecting minors "by redressing past harms or preventing future ones." *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 515 (4th Cir. 2002) (quoting *Satellite Broad. & Commc'ns Ass'n v. FCC*, 275 F.3d 337, 356 (4th

Cir. 2001)) (internal quotation marks omitted). Maryland's decision to ban the administration of conversion therapy on minors is bolstered by research indicating that conversion therapy is likely harmful to minors. The legislation relies on the findings and statements of professional organizations to conclude that conversion therapy has negative effects on minors. In addition to the American Psychological Association Task Force findings, some of the most compelling evidence includes:

> (1) American Psychiatric Association statement that "[i]n the last four decades, 'reparative' therapists have not produced any rigorous scientific research to substantiate their claims of cure. Until there is such research available, the American Psychiatric Association recommends that ethical practitioners refrain from attempts to change individuals' sexual orientation, keeping in mind the medical dictum to first, do no harm[.]"

> (2) American School Counselor Association position paper stating that "[i]t is not the role of the professional school counselor to attempt to change a student's sexual orientation or gender identity" and that "[p]rofessional school counselors do not support efforts by licensed mental health professionals to change a student's sexual orientation or gender as these practices have been proven ineffective and harmful[.]"

> (3) American Academy of Child and Adolescent Psychiatry article stating that "[c]linicians should be aware that there is no evidence that sexual orientation can be altered through therapy, and that attempts to do so may be harmful . . . such efforts may encourage family rejection and undermine self-esteem, connectedness and caring, important

protective factors against suicidal ideation and attempts."

(4) American Association of Sexuality Educators, Counselors, and Therapists statement that "[r]eparative therapy (for minors, in particular) is often forced or nonconsensual,[] has been proven harmful to minors,[] and that there is no scientific evidence supporting the success of these interventions[.]"

(ECF No. 1-1, at 2-4). These sources indicate that conducting conversion therapy on minors could potentially harm their emotional and physical well-being and, thus, prohibiting the practice of conversion therapy on minors would abate the harmful outcomes caused by conversion therapy. Thus, § 1-212.1 directly advances Maryland's goal of protecting minors.

Plaintiff argues that Defendants cannot meet their burden to prove that the harm § 1-212.1 alleviates is "real, not merely conjectural." (ECF No. 2, at 32 (quoting *Turner Broad Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994))). Plaintiff also points out that the Maryland legislature overlooked "relevant perspectives" in drawing the conclusion that conversion therapy is harmful to minors. (ECF No. 1 ¶¶ 42-52). However, as recognized in *Otto*, courts "have permitted litigants to justify speech restrictions by reference to studies and anecdotes pertaining to different locales altogether, or even, in a case applying strict scrutiny, to justify restrictions based solely on history, consensus, and 'simple common sense.'" *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555

(2001) (quoting *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995)) (internal quotation marks omitted). Additionally, "[l]egislatures are entitled to rely on the empirical judgments of independent professional organizations that possess specialized knowledge and experience concerning the professional practice under review, particularly when this community has spoken with such urgency and solidarity on the subject." *King*, 767 F.3d at 238. Because the evidence provided in the legislation is more than adequate to indicate the potentially harmful effects of conducting conversion therapy on minors and conclude that prohibiting conversion therapy on minors would mitigate those effects, Plaintiff's arguments to the contrary fail to show that § 1-212.1 does not advance Maryland's goal of protecting minors.

Finally, "intermediate scrutiny does indeed require the government to present actual evidence supporting its assertion that a speech restriction does not burden substantially more speech than necessary[.]" *Reynolds v. Middleton*, 779 F.3d 222, 229 (4th Cir. 2015). "[T]he regulation need not be the least restrictive means available, '[b]ut [Maryland] still may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals.'" *Id.* at 230 (quoting *McCullen v. Coakley*, 573 U.S. 464, 486 (2014)) (first alteration in original).

Plaintiff argues that "Defendants [] cannot meet their . . .
burden of showing that [§ 1-212.1] is the least restrictive means
for advancing Maryland's purported interests or that the statute
is otherwise narrowly tailored." (ECF No. 2, at 35). However,
the scope of § 1-212.1 is limited. The statute only prohibits
conversion therapy when it is conducted *by* licensed practitioners
*on* minors. Additionally, the statute prohibits only speech uttered
in the process of conducting conversion therapy. As stated above
when analyzing whether the speech prohibited by § 1-212.1 is
conduct, because the statute allows licensed practitioners to
express their views about and recommend conversion therapy to their
minor clients, it regulates only the speech necessary to advance
Maryland's goal of protecting minors.[2]

During the motions hearing, Plaintiff added to his argument
that § 1-212.1 is not narrowly tailored, asserting that the statute
fails to differentiate between voluntary and forced change
efforts. However, children under the age of 16 do not have
capacity to consent to psychological treatment. MD. CODE ANN.,

_____

[2] Plaintiff adds that § 1-212.1 is "wildly underinclusive,
further undermining any notion of narrow tailoring[]" because it
"regulates only licensed professionals, necessarily excluding
conversion therapy offered by unlicensed religious counselors and
clergy." (ECF No. 2, at 36-37) (internal quotations omitted).
However, Maryland will not be punished for "leaving open more,
rather than fewer, avenues of expression, especially when there is
no indication that the selective restriction of speech reflects a
pretextual motive." *Williams-Yulee v. Fla. Bar*, 135 S.Ct. 1656,
1670 (2015). Thus, Plaintiff's argument is without merit.

HEALTH—GEN. § 20-102 (2017); MD. CODE ANN., HEALTH—GEN. § 20-104(b)(1)
(2015). Children over the age of 16 do not possess "the capacity
to refuse consultation, diagnosis, or treatment for a mental or
emotional disorder for which a parent, guardian, or custodian of
the minor has given consent." *Id.*, § 20-104(b)(2). Because
Maryland law prevents minors from consenting to therapy in many
circumstances, it is difficult to conceive how § 1-212.1 could be
modified to allow voluntary conversion therapy while complying
with Maryland consent laws and achieving Maryland's goal of
protecting minors. Thus, Plaintiff has not offered a viable
alternative to § 1-212.1 that would achieve the narrowing effect
he desires. *See King*, 767 F.3d at 240 ("As [p]laintiffs have
offered no other suggestion as to how the New Jersey legislature
could achieve its interests in a less restrictive manner, we
conclude that [the conversion therapy prohibition] is sufficiently
tailored to survive intermediate scrutiny.").

Accordingly, Plaintiff has failed to state a free speech claim
upon which relief can be granted because § 1-212.1 would survive
a constitutional challenge under intermediate scrutiny.

### C. Free Exercise

Plaintiff alleges that § 1-212.1 infringes his First
Amendment right to free exercise of religion under the First
Amendment. Specifically, he states that § 1-212.1 targets his
"sincerely held religious beliefs regarding human nature, gender,

17

ethics, morality, and counseling to eliminate, reduce, or resolve unwanted same-sex attractions, behaviors, or identity" by prohibiting him from "offering . . . counseling that is consistent with [those] religious beliefs." (ECF No. 1, at 34).

Defendants argue that Plaintiff fails to state a claim for violation of his rights under the First Amendment Free Exercise clause. (ECF No. 26-1, at 14). Defendants argue that, because § 1-212.1 does not specifically or implicitly target Plaintiff's sincerely held religious beliefs, the statute requires only rational basis review. (*Id.*, at 15). Defendants conclude that "Count III should be dismissed[]" because "[t]here can be no doubt [] the state of Maryland has a legitimate interest in protecting minors from harmful conduct. (*Id.*, at 15-16).

In response, Plaintiff states that Defendants' argument "do[es] not overcome the well-pleaded allegations of [Plaintiff]'s [c]omplaint, which are presumed true on a motion to dismiss." (ECF No. 47, at 14). Plaintiff adds that he "has alleged, and is entitled to adduce evidence at trial to prove, that [§ 1-212.1] was motivated by animus and displays hostility towards the religious convictions of [Plaintiff.]" (*Id.*) Plaintiff states that § 1-212.1 "constitutes an impermissible religious gerrymander[,]" because it "targets substantially similar conduct but unevenly proscribes the conduct purporting to cause the harm[.]" (*Id.*, at 16) (internal citation and quotation marks

18

omitted).  Thus, "Defendants' contentions are contradicted by . .
. [Plaintiff's] [c]omplaint" and "it is premature and improper to
determine motives or the government's purpose for enacting a law"
at this juncture.  (*Id.*, at 16-17).

The First Amendment provides that "Congress shall make no law
respecting an establishment of religion, or prohibiting the Free
Exercise thereof."  U.S. Const., amend. I.  The First Amendment
does not, however, provide absolute protection to engage in
religiously motivated conduct.  *McCarthy v. Hornbeck*, 590 F.Supp.
936, 939 (D.Md. 1984) ("Analysis of a free exercise claim begins
with recognition of the fundamental proposition that the freedom
to hold religious beliefs is absolute, whereas the freedom to act
on those beliefs is not.").  "[A] neutral, generally applicable
law does not offend the Free Exercise Clause, even if the law has
an incidental effect on religious practice."  *Am. Life League,
Inc. v. Reno*, 47 F.3d 642, 654 (4th Cir. 1995) (citing *Emp't Div.,
Dep't of Human Ress. v. Smith*, 494 U.S. 872, 878-79 (1990)).

"[A] law lacks neutrality if it 'targets religious beliefs'
or if its 'object . . . is to infringe upon or restrict practices
because of their religious motivation.'"  *Abdus-Shahid v. Mayor of
Balt.*, 674 F.App'x 267, 271 (4th Cir. 2017) (quoting *Church of the
Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533
(1993)) (internal marks omitted). Section 1-212.1 prohibits all
licensed practitioners from engaging in conversion therapy without

mention of or regard for their religion. Thus, the statute is, at a minimum, facially neutral. *Id.* at 272 (stating that the policy in question was facially neutral because it "is silent as to religion or religious practice").

As applied, Plaintiff has failed to provide facts indicating that the "object of [§ 1-212.1] was to burden practices because of their religious motivation." *Bethel World Outreach Ministries v. Montgomery Cty. Council*, 706 F.3d 548, 561 (4th Cir. 2013). Plaintiff's bare conclusion that § 1-212.1 displays hostility towards his religious convictions is not enough, acting alone, to state a claim that § 1-212.1 violates his free exercise rights. To the extent Plaintiff argues that § 1-212.1 is not generally applicable because it allows non-licensed individuals to provide conversion therapy counseling, his argument is misguided. The statute's allowance for conversion therapy by non-licensed individuals has no bearing on Plaintiff's rights under the Free Exercise clause and is not indicative of Plaintiff's contention that § 1-212.1 implicitly suppresses religious beliefs. Thus, § 1-212.1 is also generally applicable. Because § 1-212.1 is a neutral law of general applicability, it triggers and, based on the intermediate scrutiny already applied above, withstands rational basis review. Accordingly, Plaintiff's claim that § 1-212.1 violates his right to free exercise of religion will be dismissed.

**D.   Vagueness**

Defendants next attack Plaintiff's claims that § 1-212.1 is unconstitutionally vague, arguing that the statute is clear because it "prohibits certain licensed practitioners from seeking to change a minor's sexual orientation or gender identity, defines the practice of conversion therapy by certain licensed practitioners as unprofessional conduct, and subjects them to discipline by their licensing board."   (ECF No. 25, at 21). Defendants add that Plaintiff's purported familiarity with and eagerness to practice conversion therapy also indicates his ability to understand the meaning of § 1-212.1.  (*Id.*, at 22).

Plaintiff argues that § 1-212.1, "on its face and as applied, is impermissibly vague [because] it requires licensed professionals . . . and government officials . . . to guess at [its] meaning and differ as to [its] application."  (ECF No. 1 ¶ 206).  Plaintiff argued at the motions hearing that § 1-212.1 is vague in four specific ways.  First, the statute simply bans all conversion therapy without differentiating between different types of therapy such as aversive and non-aversive.  Second, the statute fails to differentiate between different therapy change goals such as converting sexual orientation versus converting gender identity.  Third, the statute does not recognize the difference between voluntary and coerced conversion therapy.  Finally, the statute does not clarify whether conversion therapy, as codified,

encompasses sex orientation change efforts that originate with the client.

Plaintiff's vagueness arguments rely, in part, on his argument that § 1-212.1 regulates speech. "A more stringent vagueness test should apply[]" when a regulation "threatens to inhibit the exercise of constitutionally protected rights." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982). However, "[i]t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined" on a less stringent, as applied, basis. *Johnson v. United States*, 135 S.Ct. 2551, 2580 (2015) (*quoting United States v. Mazurie*, 419 U.S. 544, 550 (1975)); *see also Guardian Plans Inc. v. Teague*, 870 F.2d 123, 125 (4th Cir. 1989) ("[I]n challenges to statutes which do not implicate first amendment rights, 'a party who engages in conduct clearly proscribed by a statute cannot complain of the vagueness of that statute as applied to others.'" (quoting *United States v. Santoro*, 866 F.2d 1538, 1542 (4th Cir. 1989))). In light of the finding that § 1-212.1 regulates conduct, only Plaintiff's as applied void for vagueness challenge will be evaluated here.

Voiding a statute for vagueness is an extraordinary remedy. *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). A regulation may be deemed impermissibly vague if it "fails to provide people of ordinary intelligence a reasonable opportunity

to understand what conduct it prohibits." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward*, 491 U.S. at 794.

Here, the statutory language does not require Plaintiff to make an "untethered, subjective judgment[]" about the conduct it prohibits. *Humanitarian Law Project*, 561 U.S. at 21. Although, as Plaintiff argues, sexual orientation and gender identity may be fluid labels that can fluctuate for a single client, § 1-212.1 defines the prohibited therapy in a way that regardless permits Plaintiff's compliance with the statute. As for Plaintiff's specific arguments, § 1-212.1's definition of conversion therapy encompasses *any* effort to change an individual's sexual orientation or gender expression. Thus, the statute prohibits both aversive and non-aversive therapy, or any kind of therapy meant to change an individual's sexual orientation or gender expression. Similarly, the statute's definition of conversion therapy indicates that all such therapy is prohibited, regardless of whether the desired change goal originates with the patient or with the therapist. Finally, the definition also indicates an outright ban on conversion therapy regardless of whether the therapy is voluntary. Plaintiff's specific vagueness arguments do not dispute the statute's clarity, but focus instead on the breadth of conversion therapy as defined by the statute. However, as

already recognized, the statute is narrowly tailored and thus Plaintiff's arguments are without consequence.

During the motions hearing, Plaintiff relied on a number of hypothetical scenarios to demonstrate § 1-212.1's purported vagueness. However, because Plaintiff's First Amendment rights are not implicated here, speculative applications of § 1-212.1 cannot form an additional basis for evaluating the purported vagueness of § 1-212.1. *See, e.g., Humanitarian Law Project*, 561 U.S. at 19 (stating that the United States Court of Appeals for the Ninth Circuit wrongfully "considered the statute's application to facts not before it" when considering whether a statute is vague only on an as applied basis).

### E. Maryland Constitutional Claims

Plaintiff's remaining claims arise under the Maryland Constitution, and there is no independent basis for federal jurisdiction. Under 28 U.S.C. § 1367(c)(3), the court may decline to exercise supplemental jurisdiction over state law claims if the court "has dismissed all claims over which it has original jurisdiction[.]" *Bigg Wolf Disc. Video Movie Sales, Inc. v. Montgomery County*, 256 F.Supp.2d 385, 400-01 (D.Md. 2003). In *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), the Supreme Court cautioned that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading

of applicable law." Thus, if "federal claims are dismissed before trial . . . state claims should be dismissed as well." *Id.; see also Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001) ("[W]e conclude that under the authority of 28 U.S.C. § 1367(c)[] . . . a district court has inherent power to dismiss the case[] . . . provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met.").

Because Plaintiff's free speech and free exercise claims, over which the court has original jurisdiction, will be dismissed for failure to state a claim, the court declines to exercise supplemental jurisdiction over the remaining state law claims and they will be dismissed without prejudice.

## II. Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted and Plaintiff's motion for preliminary injunction will be denied as moot. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
